| 102 | 701 |
|---|---|
| 110 | 503 |
| 102 | 701 |
| 112 | 171 |
| 102 | 701 |
| 114 | 576 |
| 102 | 701 |
| 121 | 120 |
| 123 | 197 |
| 102 | 701 |
| 125 | 623 |
| 102 | 701 |
| 129 | 198 |
| 102 | 701 |
| 132 | 574 |
| 102 | 701 |
| 137 | 624 |
| 102 | 701 |
| 142 | 519 |
| 102 | 701 |
| f143 | 181 |

VALENTINE HARLAN, Appellant, v. JACOB HARLAN, *et al.*

**Contracts:** STATUTE OF FRAUDS. An oral promise by one person to pay another for caring for a third person is not within the inhibition of the statute of frauds against oral promises to answer for the default or miscarrage of another, where the latter was *non compos mentis,* and no indebtedness was incurred by his estate, as a promise arising from an original consideration of benefit or harm moving between the contracting parties is not within the statute.

SAME. Furnishing board and performing services in strict compliance with an oral agreement to board and care for one in consideration of an interest in real property takes the agreement out of Code 1873, section 3664, prohibiting the admission of oral evidence for the creation or transfer of an interest in lands except leases for a term not exceeding one year, by virtue of section 3663, providing that the former section does not apply where the purchase money, or any portion thereof, has been received by the vendor, as the term "purchase money" may mean property or labor performed.

CONSIDERATION. A promise to board and care for a third person whom neither of the parties is under legal obligations to provide for, is a valid consideration for the promise to pay for such board and service.

*Appeal from Clarke District Court.*—HON. H. M. TOWNER, Judge.

WEDNESDAY, OCTOBER 6, 1897.

GEORGE HARLAN was owner, in his lifetime, of the southeast quarter of section 27 and the north half of the northwest quarter of the northeast quarter of section 34, all in township 73 north, of range 25 west of the fifth P. M., and upon his death his will was admitted to probate, devising the land to his wife during her lifetime, and thereafter to Jerome Harlan during his lifetime, and upon the death of said Jerome to his other sons, Valentine and Jacob, share and share alike. Julia Harlan, the wife, died September 17, 1888, and Jerome Harlan March 15, 1894. The plaintiff,

Valentine, asks that the land be partitioned. The defendant, Jacob, answers that he and plaintiff entered into an agreement, by the terms of which defendant was to care for and keep Jerome, who was feeble-minded, during life, which he did, and in consideration therefor plaintiff agreed to convey his interest in the land to the defendant. In the cross-petition he asks that plaintiff be required to perform his part of the contract. Decree was entered as prayed by defendant, and plaintiff appeals.—*Affirmed.*

*Temple & Hardinger* for appellant.

*Tallman & Crist* and *McIntire Bros. & Jamison* for appellees.

LADD, J.—It is conceded in argument that Jerome Harlan was entitled to the use of the land in controversy while he lived, and that the remainder belonged to plaintiff and defendant, share and share alike. Jerome was feeble-minded and helpless, and could not talk, walk, or feed himself, dress or undress, or attend unaided to nature's calls. Upon the death of his mother, in 1888, the plaintiff became his guardian, and at once entered into an arrangement with the defendant, under which the latter kept and cared for Jerome from September 17, 1888, one year, and the plaintiff the year following, and so on alternately. The brother, when caring for Jerome, received four dollars per week for doing so, though this appears to have been inadequate as compensation. Valentine and his wife went to Jacob's home September 17, 1893, in order to remove Jerome, as, under the arrangement, they were required to care for him the following year. While there, Valentine proposed that if Jacob would care for Jerome as long as he lived, Jacob might have the farm, and Valentine would

convey to him his interest therein. That this proposition was made is undisputed. That it was accepted and acted upon by the parties is very clearly and satisfactorily established by the evidence. Valentine and his wife say that the acceptance was conditional upon Jacob's staying at home, and assisting in the care of Jerome. But Valentine admitted, to at least six different witnesses, having made the contract, while Jacob and his wife testify that they accepted the proposition, and that Jerome was left with them, and cared for, in pursuance thereof.

II. The plaintiff insists that the agreement is within the statute of frauds prohibiting the admission of oral evidence "for the creation or transfer of any interest in lands, except leases for a term not exceeding one year." Code 1873, section 3664. This does not apply, however, "where the purchase money, or any portion thereof, has been received by the vendor." Code 1873, section 3665. The term "purchase money" means the consideration paid, and may be property or labor performed. *Devin v. Himer*, 29 Iowa, 297; *Stem v. Nysonger*, 69 Iowa, 512. The board was furnished and the labor performed in strict compliance with the agreement. That Jerome lived only a few months, instead of many years, was a contingency, without doubt, considered in making the contract. Having entered into the agreement to convey the land if defendant cared for his brother till the happening of an uncertain event,—*i. e.*, the brother's death,—the plaintiff will not be relieved from fulfilling it, because this event occurred sooner than he anticipated. Having received all the consideration he bargained for, he will not, in the absence of fraud, be heard to complain. *Whitefield v. McLeod,* 1 Am. Dec. 269; *Smock v. Pierson,* 34 Am. Rep. 269.

III. It is said the oral promise to pay for the care of Jerome was within the statute of frauds. as

its purport was to answer for the debt of another. But Jerome was *non compos mentis,*—incapable of making a contract or of incurring indebtedness. Nor is it claimed he attempted so to do. The theory of plaintiff seems to be, that as Jerome's estate was chargeable with the expense of his care and maintenance, a promise to pay therefor by plaintiff is within the statute. No expense had been incurred for the care of Jerome, or indebtedness, implied or otherwise, by his estate, so that the promise was not in any sense, collateral. The board and care was furnished on the faith of the agreement, and not on that of any implied liability of the estate. The facts bring the case clearly within the rule that a promise arising from an original consideration of benefit or harm moving between the contracting parties is not within the statute of frauds. *Johnson v. Knapp*, 36 Iowa, 616; *Chamberlain v. Ingalls*, 38 Iowa, 300; *Benbow v. Soothsmith*, 76 Iowa, 151; *Cooper v. Chambers*, 25 Am. Dec. 710; 2 Parsons, Cont. 21.

IV. Was the promise without consideration? It may be conceded that neither brother was under legal obligation to care for Jerome. It is said by Parsons, the rule is perfectly well settled "that, if a benefit accrues to him who makes the promise, or if any loss or disadvantage accrues to him to whom it is made, and accrues at the request or on the motion of the promisor, although without benefit to the promisor, in either case the consideration is sufficient to sustain assumpsit." 1 Parsons, Cont. 451. See *Blake v. Blake*, 7 Iowa, 46; *Handrahan v. O'Regan*, 45 Iowa, 298. Courts "will not ask whether the thing that forms the consideration does, in fact, benefit the promisee or a third party, or is of any substantial value to any one. It is enough that something is promised, done, foreborne, or suffered by the party to whom the promise is made, as consideration for the

promise made to him." Anson, Cont. 63. In *Talbott v. Stemmons' Executor* (Ky.) 12 S. W. Rep. 297, abandonment of the use of tobacco was adjudged a sufficient consideration for promise to pay five hundred dollars. A promise to pay a nephew five thousand dollars, by an uncle, in event the former abstained from drinking liquor, using tobacco, swearing, and playing cards or billiards for money, until twenty-one years old, was held to be founded on a good consideration in *Hamer v. Sidway*, 124 N. Y. 538, 21 Am. St. 693 (27 N. E. Rep. 256). Also see *Lindell v. Rokes*, 21 Am. Rep. 395. Expenses incurred on a trip to Europe by a nephew, at the request of his uncle, is sufficient consideration for the latter's promise to reimburse him, though the trip was entirely for the nephew's benefit. *Devecmon v. Shaw* (Md.) 14 Atl. Rep. 464. So, too, it is held that a promissory note, executed by reason of a father naming a child after the promisor, and in pursuance of his agreement that if the child were so named he would provide for its education and support, is based on a sufficient consideration. *Wolford v. Powers*, 85 Ind. 294 (44 Am. Rep. 16). It is quite immaterial, then, whether the plaintiff derived any advantage from the contract. If the defendant waived some legal right to which he was entitled, or suffered some disadvantage, or did something at the plaintiff's request, the consideration was ample. The care of the imbecile brother was an almost unbearable burden, for which labor and means were necessary. While it may not have been a benefit to the plaintiff, it required sacrifice and expense on the part of defendant. These he undertook at plaintiff's request, and what he promised and did was a good consideration for the agreement to convey the land.—AFFIRMED.