GEORGE GUETZLAFF, Appellee, v. FIRST NATIONAL BANK OF LAWLER, Appellant.

**GUARANTY:** Consideration—Extension of Time of Payment. A
1 written guaranty is supported by a sufficient consideration when it enables the principal debtor to obtain an extension of time in the payment of his debt.

**GUARANTY:** Discharge of Guarantor—Surrender of Obligations Under
2 Nonaccepted Plan of Settlement. A guarantor is not discharged because of the fact that, shortly after the guaranty was signed, an *officer* of the guarantee attempted, in his individual capacity, to act as a trustee for all the creditors of the principal debtor, and to that end took, as grantee, a note and chattel mortgage from the principal debtor, but surrendered the same, upon its later repudiation by the debtor, and upon the nonacceptance of the plan by the creditors.

*Appeal from Chickasaw District Court.—W. J. Springer,*
Judge.

May 13, 1924.

Rehearing Denied September 20, 1924.

Suit to cancel a contract of guaranty. Decree was entered
as prayed in plaintiff's petition, and the defendant appeals.—
*Reversed.*

*Shaffer & Rehorst* and *Condon & Clary,* for appellant.

*M. E. Geiser* and *R. Feyerbend,* for appellee.

Faville, J.—R. E. Guetzlaff is the son of appellee. He had
worked in a bank, but, at the time of the transactions involved
in this case, was operating a farm belonging to his father, the
appellee, as a tenant under a lease. He had become indebted to
appellant on four notes in different amounts, one of said notes
maturing on or about October 15, 1921. About the time of the
maturity of said note, R. E. Guetzlaff had an interview with the
officers of appellant in regard to his indebtedness to the bank.
It was then suggested that his entire indebtedness to the bank on
the various notes, together with the accrued interest thereon, be
merged in one note, and that the debtor be given a year's ex-
tension of time on the same. On October 19, 1921, the total
indebtedness due on the four notes of the debtor to appellant,
including interest due thereon, was computed, and a new note
was executed by the debtor, due in one year, for the principal
sum of $2,355. This amount also included an additional sum of
$1.48, which was credited to the maker on open account, to
cover an overdraft. There was a conversation, at the time of
the signing of this note by the debtor, with regard to procuring
the signature of appellee to said note. The evidence tends to
show that there was an understanding at the time between the
bank officers and the son that the latter was to see his father
with regard to furnishing security for the new note which the

son had executed. The note of $2,355 so executed was held by appellant, and the other notes of R. E. Guetzlaff were still retained by it, uncanceled, and without being charged off on the books of the bank. A short time thereafter, appellee called at the bank, and was interviewed by the bank officers with regard to his signing the note of $2,355. He refused to sign the note at the time, and stated, in effect, that he did not care to have his son know that he would become surety for him. The evidence tends to show that he suggested that he wished the son to remain on his farm, and expressed the belief that he could work out his indebtedness, if given an opportunity to do so. We think the evidence sufficiently shows that appellee expressed a willingness to become surety for the indebtedness of the son if it could be arranged in some other way than by his signing the son's note, if the time of payment was extended. Thereupon, the written contract of guaranty involved in this action was drawn up by an officer of appellant bank, and signed by appellee and delivered to the bank. It is as follows:

"Lawler, Iowa, November 2nd, 1921.
"To the First National Bank,
"Lawler, Iowa.

"In consideration of one dollar and other valuable consideration the receipt of which is hereby acknowledged, I, G. J. Guetzlaff hereby acknowledge myself liable and agree to pay in case of default of payment, any and all notes signed or to be signed by my son, R. E. Guetzlaff to the above named bank to the extent to $2,355.00.

"Signed this 2nd day of November, 1921.
"(Signed) G. J. Guetzlaff."

The son was not present when this transaction took place at the bank. It is claimed that he did not know of it.

After the contract of guaranty had been signed by appellee, the bank attached the same to the new note, of $2,355, and the note was then placed in the assets of the bank as a bill receivable, and the former notes given by R. E. Guetzlaff were canceled and charged off on the books of the bank. It does not appear that they were at that time delivered to the son. The

sum of $1.48 was placed to the credit of the debtor on open account.

A few days after this transaction had been completed, R. E. Guetzlaff filed a petition in bankruptcy. Thereupon, appellee called at the bank and informed the officers thereof that he would not be bound by the contract of guaranty, and repudiated the same. At that time there was a talk between the officers of the bank and appellee in regard to trying to get R. E. Guetzlaff to withdraw the petition in bankruptcy and to turn his property over to a trustee, to secure all of his indebtedness. Appellee favored having this done. Shortly after this, an officer of appellant saw R. E. Guetzlaff, and the latter agreed to the proposition of having a trustee appointed, and to executing a chattel mortgage on his personal property, to secure all of his outstanding indebtedness to his various creditors. Accordingly, R. E. Guetzlaff and his wife executed a note of $6,100, which was made payable to one Shaffer, the president of appellant bank, as a trustee, and said note was secured by a chattel mortgage on the personal property of the maker. This note was not payable to the bank, and never in any way became one of its assets. It was what might properly be called a "blanket" obligation, and was intended to represent all of the indebtedness that R. E. Guetzlaff owed to his various creditors. It was his own estimate of said total indebtedness, and in making said estimate, the note of $2,355 was computed as part thereof. As we understand the record, R. E. Guetzlaff at said time also turned over to the trustee created by this arrangement the sum of $20, which the trustee held in a trust fund. Shortly after this had been done, R. E. Guetzlaff commenced an action to cancel the note of $6,100 and the chattel mortgage to secure the same. Thereupon, as we understand the record, without contest the trustee released the chattel mortgage, surrendered the $6,100 note to R. E. Guetzlaff, and turned the $20 in cash over to the trustee in bankruptcy. Subsequently, this action was instituted by appellee, to cancel the contract of guaranty.

The foregoing is a general statement of the facts, as we find them to be in the record. Some of the matters are in dispute, especially as to details, but in a general way the foregoing

statement covers the matters necessary to a consideration of the questions raised on this appeal. We have not attempted to set out all of the facts. The argument in this court has taken a somewhat wider range than the allegations of the petition, as amended, would warrant. We must consider the case as made by the pleadings and by the evidence in support thereof.

I. Appellee contends that there was no consideration for the execution of the contract of guaranty. The instrument, being in writing, imports a consideration, and a consideration is recited therein, although the evidence shows that nothing was in fact paid by the bank to appellee for the execution of said contract. It does not appear from the evidence that appellant was threatening to sue R. E. Guetzlaff on his indebtedness, or that it promised to forbear suit because of the execution of the new note and the signing of the guaranty. But, notwithstanding this, we think there was sufficient consideration in law to support the contract of guaranty. It was not necessary that there be any consideration moving from the bank to the guarantor. The extension of time on the indebtedness to the principal debtor, R. E. Guetzlaff, was sufficient consideration to support the contract of guaranty. *Williamson Heater Co. v. Whitmer,* 191 Iowa 1115; *Taylor, Thomas & Co. v. Wightman,* 51 Iowa 411; *Burke v. Dillin,* 92 Iowa 557; *Koon v. Tramel,* 71 Iowa 132; *Queal v. Peterson,* 138 Iowa 514. Appellee desired that the time be so extended for the benefit of the debtor, who was his tenant.

1. GUARANTY: consideration: extension of time of payment.

It is contended by appellee that there was no meeting of the minds of the parties; that the arrangement was, in fact, tentative; and that the note was not to become effective unless the appellee signed it as surety, rather than a separate contract of guaranty. No such issue is tendered in the pleadings.

In any event, there was a completed contract, and appellee became bound on his contract of guaranty, and the son became liable on the note. We think, upon the record, that there was sufficient consideration to support the contract of guaranty signed by appellee.

II. Was the guarantor released from his contract of guaranty? Obviously, the statement of appellee to appellant's of-

ficers after the contract of guaranty had been executed and delivered, that he would not be bound thereby, would not discharge appellee in any manner from the obligation of the written instrument. *Merchants' Nat. Bank v. Cressey*, 164 Iowa 721.

2. GUARANTY: discharge of guarantor: surrender of obligations under nonaccepted plan of settlement.

It is urged by appellee that the action of the president of the bank in taking the note of $6,100 and the chattel mortgage on the property of the debtor, as trustee, and the subsequent release of the same, operated as a release of the guarantor on his contract. A party who holds a contract of guaranty may by his act release the guarantor, even though he may not intend to do so. Under the facts of this case, the question is whether or not appellant bank has done any act or thing subsequent to the execution of the contract of guaranty that releases the guarantor. In the first place, it is to be noticed that the arrangement that the debtor should appoint a trustee, to whom he would give a chattel mortgage securing all of his indebtedness to his various creditors, was not made with the appellant bank, as such. It was made with an officer of said bank, who acted as a trustee; but the bank itself is not shown to have been in any legal way a party to that transaction. The blanket note of $6,100 was made payable to F. B. Shaffer, trustee, for the benefit of all the creditors of R. E. Guetzlaff, and the chattel mortgage to secure the same was made in the same way. Legally, the situation would have been no different, so far as the rights of appellee are concerned, if the trustee had been some party in no way connected with appellant bank. The bank did not in any way change its position with regard to the $2,355 note of R. E. Guetzlaff, nor in regard to the contract of guaranty. The trustee held the blanket note and the chattel mortgage as trustee for the benefit of all of the creditors, including the bank, whose note was considered in the estimate of the total indebtedness of $6,100. There was no change whatever in the status between the bank and R. E. Guetzlaff or the bank and appellee. The note and chattel mortgage that were given to the trustee were, as we have said, a mere attempt at an arrangement for the purpose of having all the creditors of R. E. Guetzlaff act in unison, and for a common purpose of having all of his debts

secured by the chattel mortgage. The creditors did not accept the arrangement, and R. E. Guetzlaff repudiated it, and the trustee merely restored the *status quo* by surrendering back the note, canceling the chattel mortgage, and turning the $20 payment over to the trustee in bankruptcy. We see nothing in this transaction that in any way changed the relationship or obligation of R. E. Guetzlaff on his note of $2,355 to appellant bank, or that operated to release or discharge appellee. Certainly nothing that happened between R. E. Guetzlaff and the trustee operated to the detriment of appellee. This would be true even though appellant itself had been the trustee, which is not the fact, under the record.

From a careful examination of the record in the case, we fail to find that appellant bank did any act or thing whereby it released appellee from his liability under the contract of guaranty. As bearing on the question, see *Groendyke v. Musgrave,* 123 Iowa 535; *Citizens Bank v. Whinery Bros.,* 110 Iowa 390; *Central St. Bank v. Ford,* 194 Iowa 904.

We find nothing in the record upon which to base a conclusion that appellant bank waived its right to enforce the contract of guaranty, or that in any manner estopped it from enforcing the same against appellee. We reach the conclusion that the trial court was in error in granting appellee the relief prayed for in his petition, and the decree appealed from, therefore, is—*Reversed.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.