FRANCES CLAYMAN et al., Appellants, v. MRS. HARRY M. BIBLER et al., Appellees.

No. 40208.

JUNE 23, 1930.

*Hughes, Taylor, O'Brien & Faville,* for appellants.

*W. B. Quarton,* for Mr. and Mrs. Harry M. Bibler, Adam Cook, W. B. Quarton, and George Cook, appellees.

498

*Frank W. Senneff*, pro se, appellee.

*J. L. Bonar*, for interveners, appellees.

STEVENS, J.—I.  J. C. Cook died testate in Kossuth County on the 6th day of June, 1920.  By his will, he devised certain property to trustees, to be managed by them for a time, the in-come derived therefrom to go to his daughter, Mabel Lonergan, so long as she should live.  At her death, the property was to go to his brother, George Cook, and George Cook's children then living, and to the two daughters of George's sister Mary.  Mabel Lonergan died prior to August 23, 1924.  The devisees or persons entitled to share in the estate at her death were George Cook, Adam Cook, Edward Cook, John Cook, and Mary La Fountaine, the four last named being the children of George Cook then living.  Cathryn Hipsher, one of the daughters of George Cook, predeceased her father, leaving as her sole heirs at law Lillian, Nialet, Cathryn, and George Hipsher, named as interveners in this case.  All are minors, and are represented by their father, Herbert Hipsher, as guardian.

On August 23, 1924, the four surviving children of George Cook made and entered into the following agreement in writing, which is also signed by Herbert Hipsher:

"Know All Men By These Presents:  That we, Ed. Cook, Adam Cook, John Cook and Mary La Fountaine, being all the living children of George Cook (brother of Hon. John C. Cook, late of Algona, Iowa,) do hereby agree between and among ourselves that:

"Whereas, our sister, Cathryn Hipsher, did depart this life before the death of our cousin, Mabel C. Lonergan, late of Algona, Iowa, and under the peculiar wording of the will of our uncle, Hon. John C. Cook, because she predeceased our cousin Mabel, would not share and her children would not share in the estate of our said uncle; and believing that it was the wish and desire that the children of our sister, Cathryn, should share in his estate as expressed to us by our said uncle, the Hon. John C. Cook,

"Now, therefore, we the undersigned do hereby agree that we will divide whatever property we may receive from the trus-

tees, or estate of our said uncle, Hon. John C. Cook, into five equal parts, instead of four equal parts, and that the one-fifth equal part shall go to the children of our said sister, Cathryn Hipsher.

"The consideration for this agreement is to save complication growing out of the settlement of said estate, and the honest belief that it was the real wish of our said deceased uncle, and that Herbert Hipsher, husband of our late sister, Cathryn, will lend his services and good offices towards the prompt settlement and just settlement of the estate of our said uncle."

Herbert Hipsher, as guardian, appeared in this action, which is an action in partition, and filed a petition in intervention, setting up and alleging that his wards, the children of Cathryn Hipsher, are, by reason of the foregoing contract, possessed of an interest in the property described in the petition, and prayed that such interest be confirmed and established by the court. A motion to strike the petition in intervention was overruled by the court. In due time, Adam Cook, one of the parties to the contract above referred to, intervened, alleging the same matters as were alleged in the petition of Herbert Hipsher, and asking specific performance of the contract as against his comakers, and also that the designated interest of the Hipsher children be established in the land in accordance with the terms of the contract. The remaining parties to the contract answered the petition in intervention of Adam Cook, and alleged that the contract therein referred to was void for want of consideration. A reply filed in behalf of all interveners joined issue on the affirmative allegations of the answer. The court found in favor of the interveners, and a decree was entered accordingly. The major controversy, therefore, on this appeal involves only the asserted claims of the interveners.

First, it is contended by appellants that the contract specifically and in terms recites a consideration agreed upon by the parties; that such consideration is conclusive, and that no other may be shown; that the assumed consideration is neither a valid nor a legal one; and that the instrument amounts to nothing more than a written promise on the part of the children of George Cook to make a gift to the children of Herbert Hipsher, and is, therefore, wholly invalid and unenforcible.

All parties concede that interveners have no interest in the property involved unless an interest is given them by the writing in question. The consideration which appellant contends is specifically recited in the contract is contained in the last paragraph thereof. The trial court held that the recitals of this paragraph are more in the nature of the expression of the motives which prompted the execution of the contract than a formal statement of an agreed consideration.

Motive and consideration are not identical. The expectation of a definite result is often the motive which prompts the execution of a contract. Such expectation is not, however, binding. Ordinarily, consideration is the price paid for the undertaking of the promisor, but it may be for the benefit of a third party. Under the provisions of Section 9440, Code, 1927:

"All contracts in writing, signed by the party to be bound or by his authorized agent or attorney, shall import a consideration."

Unless, therefore, the consideration is clearly and definitely expressed in the contract, as contended by appellant, the writing itself imports a consideration, and, in addition thereto, there  are the mutual promises of the parties to forbear, forego, or relinquish a certain share or portion of their interest in the estate for the benefit of interveners. The rule that, where the consideration expressed in the contract is in itself a promise, and therefore contractual, it cannot generally be varied by parol, is of practically universal application. *Gelpcke, Winslow & Co. v. Blake,* 19 Iowa 263; *Rynear v. Neilin,* 3 G. Greene 310; *Lewis v. Day,* 53 Iowa 575; *McGee v. Allison,* 94 Iowa 527; *McEnery v. McEnery,* 110 Iowa 718, 719; *Schrimper v. Chicago, M. & St. P. R. Co.,* 115 Iowa 35; *Lane v. Richards,* 119 Iowa 24; *Slump v. Blain,* 177 Iowa 239; *Banwart v. Shullenburg,* 190 Iowa 418; *Chantland v. Sherman,* 148 Iowa 352; *Kay v. Spencer,* 29 Wyo. 382 (213 Pac. 571); *McCourt v. Peppard,* 126 Wis. 326 (105 N. W. 809); *Blough v. Parry,* 144 Ind. 463 (40 N. E. 70).

What appellant regards as the agreed consideration would seem to be only a recognition of that which the parties believed was the wish of the testator,—a recital of the inducement on

their part to enter into the contract, the expression of what they felt as a moral obligation. This, we think, clearly was the motive that prompted the execution of the contract, and must be distinguished from the consideration. We are inclined to accept the view of the trial court at this point. Mutual promises which operate to the advantage of one or to the detriment of the other constitute a good consideration for a contract. *Daily v. Minnick*, 117 Iowa 563; *Mail & Times Pub. Co. v. Marks*, 125 Iowa 622; *Harlan v. Harlan*, 102 Iowa 701; *Blake v. Robinson*, 129 Iowa 196; *Brown v. Jennett*, 130 Iowa 311; *Guetzlaff v. First Nat. Bank*, 198 Iowa 459; *Mohler v. Andrew*, 206 Iowa 297; *Goodman Mfg. Co. v. Mammoth Vein Coal Co.*, 185 Iowa 253; *Anderson v. Lemker*, 180 Iowa 167.

It is true that the written contract does not, in terms, convey an undivided one fifth of the share of the parties thereto to interveners, but there is a mutual expression of desire and of an intention to benefit them to the extent indicated.

It is provided by statute, Section 10968 of the Code of 1927, that a person, although not named therein, for whose benefit a contract is made, may sue thereon. The mutual agreement to forbear to claim and to relinquish a certain definite interest in the estate in question was a detriment to the parties to the contract and an advantage to interveners, for whose benefit the contract was entered into. The principle involved in this case is much like that recognized and applied in *Harlan v. Harlan*, 102 Iowa 701. In that case, Valentine and Jacob Harlan entered into an oral agreement that, if Jacob would care for Jerome, their imbecile brother, Valentine would convey his interest in the father's estate to Jacob. Neither of the brothers was under any legal obligations to care for Jerome. The plea that the agreement was without consideration was denied. It is true that there had been full performance by Jacob of the agreement at the time the case was tried. If, however, the contract was originally without consideration, strictly speaking, a consideration without a subsequent contract for which there was agreed consideration would not exist. The agreement in question is not simply one to make a gift. It is more than that. The result of the contract, if carried out, will be to vest something in interveners to which, in the absence of the contract, they could make no claim. In that sense, the result is much the same as an

executed gift. Nothing passed from interveners to any of the parties to the contract, nor was this essential to the consideration. As stated, the contract was made for their benefit, with a corresponding detriment to the four parties to the instrument. Each released his pro-rata interest in an undivided one-fourth interest in a certain other share in the property. The agreement between them to do so was mutual, and we perceive no sound reason why it was not binding. Both the cross-petition of the guardian and that of Adam Cook were properly filed in the case, and the decree confirming and establishing the interests of interveners in the property was right.

II. Referees were appointed by the court to make partition of the land. The referees reported in favor of setting off the interest of Adam and George Cook in kind, and that the balance  of the land be sold and the proceeds divided. This, it is contended, is without authority, and wholly inequitable and unjust; that the balance of the tract, which comprises something over 400 acres, cannot be sold as advantageously as the whole tract; and, therefore, that appellants and the other parties entitled to share in the estate are prejudiced by this arrangement.

This question was before us in *Todd v. Stewart*, 199 Iowa 821, and the method pursued by the referees was disapproved. Under the statute, partition of the land in kind must be made unless it cannot equitably be done. If equitable partition cannot be made, the land must be sold, and the proceeds distributed to the parties in interest according to their respective shares.

It follows that the decree confirming the report of the referees and permitting a partition of the land partly in kind cannot be sustained. The decree must be so modified as to provide that the land be all divided in kind or that it all be sold and the proceeds divided.—*Modified and affirmed.*

MORLING, C. J., and EVANS, DE GRAFF, KINDIG, and WAGNER, JJ., concur.

FAVILLE, J., took no part.

ALBERT, J., dissents.