# $\mathfrak{Staunton}$

## P. A. WOOD, AND OTHERS V. SOUTHERN SHALE BRICK CORPORATION.

September 13, 1939.

Record No. 2119.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*B. E. Estes,* for the plaintiffs in error.

*C. E. Hunter,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The defendant in error, which was the plaintiff in the trial court, Southern Shale Brick Corporation, sued P. A. Wood, and others, partners under the firm name of Wood Lumber and Supply Co., on an open account for the price of brick, sold and delivered, amounting to $967.00. The fact of the sale and the correctness of the account were proven.

The defendant filed a plea in abatement attacking the jurisdiction of the trial court by alleging that the cause of action arose in one or the other of two counties, neither of which was the county of the court in which the suit was filed and from which the writ was issued. The court struck out the plea in abatement. This action was clearly right because the plea failed to state with any degree of certainty where the cause of action did arise.

The defendant then filed a plea of the general issue and a plea of payment.

For the purpose of sustaining its defense the defendant offered witnesses to prove the origin of the transaction between the parties out of which its defense grew. The plaintiff in the very beginning of the trial, before the defendant had proceeded at any length with its testimony, introduced in evidence an agreement between the parties, which had been executed on April 15, 1938. This agreement, in words and figures, omitting its formal parts, is as follows:

"That for and in consideration of the mutual agreements herein set out and the cash herein agreed to be paid, the parties of the first part agree to sell and the party of the second part agrees to purchase from the party of the first part, one hundred sixty (160) shares of the capital stock of the Southern Shale Brick Corporation of Virginia for the sum of Eight Thousand ($8,000.00) Dollars, which is to be paid in cash by the party of the second part to the parties of the first part within five days from this date, which said five days is to be the essence of this contract. The parties of the first part agree to deliver, properly assigned, the certificates evidencing said 160 shares of stock to the party of the second part, or its nominees, when the $8,000.00 is paid in cash to the parties of the second part."

The purpose of the testimony was to show that the verbal agreement between the parties embodied two features:

First: the sale of 160 shares of stock of the brick corporation, which was owned by Wood and the Wood Construction Co., to the corporation for the sum of $8,000.00;

Second: that the contracting parties each agreed to release to the other any claims or demands of any nature or character that the one might have against the other.

As to the second feature of the agreement the testimony tended to show that the brick corporation was indebted to P. A. Wood, one of the partners, on account of unpaid salary, as an employee of the brick corporation. This arrearage in the payment of the salary account was alleged to have been caused by a dissipation of the brick corporation's funds by its officials. It was sought further to develop, by the proffered testimony, that the officials of the brick corporation were averse to what was termed an "airing" of this state of affairs. The alleged release feature of the agreement comprehended any claim that Wood might interpose on account of the conditions just stated and also any claim that the brick corporation might have against him and his partnership, which included the unpaid account for the price of the brick, which was the basis of this suit.

It appears that the Messrs. Wood, three in number, were partners trading under two firm names, the Wood Construction Company and the Wood Lumber and Supply Company. It was the latter company which was sued by the brick corporation for the price of the brick and it was the former company which sold the stock to the brick corporation. No point is made in any part of the record by either of the contesting parties as to this duality of being, therefore we shall not advert to it further.

The plaintiff below, the brick corporation, urged that the agreement, which is quoted, is a contract which is complete in itself and that if parol testimony were received which would have the effect of varying its terms and enlarging its scope, then the parol evidence rule, which is so

firmly engrafted upon our jurisprudence, would be nullified and rendered of no effect; that the rule would be so relaxed as to permit, by parol, an attack to be made upon a complete and unambiguous contract, by the introduction of another of a different import. The effect of this would be to disturb and disquiet contractual relations.

The defendant countered with the contention that the oral release agreement could be shown because it did not vary the terms of the written agreement but it disclosed an important part of the consideration for the written agreement, which it alleged can always be shown. It urged that the entire contract was to be evidenced by two separate papers, one to be the contract of sale of stock and the other to be the contract covering the releases.

Some of the courts have gone far in an apparent relaxation of the rule as to the matter of showing the consideration where it appears in the contract as a mere recital and is not of its very essence, but no court, that we know of, has allowed the contract to be altered and varied by the reception of parol testimony to nullify a contractual consideration.

This court said in the case of *Slaughter* v. *Smither*, 97 Va. 202, 206, 207, 33 S. E. 544, 545:

"Where parties have deliberately put their mutual engagements into writing, in such language as imports a legal obligation it is only reasonable to presume that they have introduced into the written instrument every material term and circumstance; and consequently all parol testimony of conversations held between them, or declarations made by either of them, whether before, after, or at the time of the completion of the contract, will be rejected. If the written contract purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied, parol evidence to vary or add to its terms is not admissible."

And in the case of *Jones* v. *Franklin*, 160 Va. 266, 270, 168 S. E. 753, 754, this is said:

"The holding of this court is succinctly stated by Judge Harrison, in *Slaughter* v. *Smither,* 97 Va. 202, 33 S. E. 544, as follows:

" 'The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument, except in cases of fraud or mistake, is so familiar and well established that citation of authority in its support would seem to be superfluous. It is a principle founded on wisdom, and cannot be too carefully guarded. Upon its enforcement the certainty and sanctity of written contracts depend, and its violation would be destructive of the most solemn transactions of life.' "

And in the case of *Richeson* v. *Wood,* 158 Va. 269, 280, 163 S. E. 339, 343, 82 A. L. R. 1189, is the following:

"Where the consideration for a written contract is mentioned therein merely by way of recital and is not a contractual term of the contract, the general rule is that the true consideration for the contract may be shown by either party by extrinsic evidence * * * ."

The converse of this is true, that where the consideration stated is of the essence of the agreement and is a contractual term of the written contract, parol testimony is not admissible to vary it from that expressed.

In other jurisdictions there seems to be almost unanimity of holding in agreement with that stated.

See *Central Life Insurance Co.* v. *Thompson* (1930), 182 Ark. 705, 33 S. W. (2d) 388; *Baum, Ex'x* v. *Lynn,* 72 Miss. 932, 18 So. 428, 30 L. R. A. 441, 442; *Ross* v. *Terre Haute, etc., Traction Co.* (1930), 92 Ind. App. 13, 173 N. E. 707; *Clayman* v. *Bibler* (1930), 210 Iowa 497, 231 N. W. 334; *Gladden* v. *Keistler* (1927), 141 S. C. 524, 140 S. E. 161; *Farmers Elevator Co.* v. *Swier* (1926), 50 S. D. 436, 210 N. W. 671; *Meyer* v. *Weber* (1937) (Mo. App.), 109 S. W. (2d) 702.

In the case of *Clayman* v. *Bibler, supra,* the rule is aptly stated:

"The rule that where the consideration expressed in the contract is itself a promise, and therefore contractual, it cannot generally be varied by parol is of practically universal application."

The Virginia cases which we have cited have not been overruled by the case of *Sale* v. *Figg,* 164 Va. 402, 180 S. E. 173. That case is readily distinguishable from the case under consideration. It involved the fact of the merger of prior agreements into a subsequent deed of conveyance. There are other distinguishing features which are not necessary to be detailed. A very comprehensive and instructive discussion of the subject referred to is found in the note to the case of *Halsey* v. *Minnesota-South Carolina Land & Timber Co.,* 174 S. C. 97, 177 S. E. 29, 100 A. L. R. 1, 17, in which cases are cited from many jurisdictions. The annotator epitomizes the holdings in this wise:

"It has been well said that 'the rule permitting the true consideration of written contracts to be inquired into by parol evidence does not apply where the statement in the contract as to the consideration is more than a mere receipt or acknowledgment of payment, and is of a contractual nature.' This rule is supported by many authorities, which, for the most part, expressly recognize a distinction, as regards the applicability of the parol-evidence rule, between cases where the consideration is not mentioned in the contract, or where it is referred to merely by way of recital of a fact, or an acknowledgment in the nature of a receipt, and cases in which the statement as to the consideration is of a contractual nature, constituting one of the essential elements of the contract. The rule precluding modification by parol evidence where the consideration is of a contractual nature applies, as subsequently shown, to deeds and all other kinds of written instruments, it being the legal effect of an instrument, not its name, which controls, when the question is raised as to whether the consideration named is one of the contractual elements of the contract.

"Attention is called to various statements explanatory of or amplifying the above doctrine."

We quote two of the annotations which seem to be apposite to the conclusions:

"And in *Milich* v. *Armour* [*Packing Co.*] (1899), 60 Kan. 229, 56 P. 1, it is said that where the consideration stated in a deed is mere recital and bears no evidence of having been made a matter of contract, parties are not estopped to show a different consideration; but where it appears to be more than a mere recital and is in any wise contractual, parol evidence cannot be admitted, nor will it be received where it would operate to defeat or destroy the conveyance itself.

"So, it is said in *Davis* v. *Gann* (1895), 63 Mo. App. 425, that, where the consideration is a mere recital of an existing fact, it may be shown to be other than that recited; that if the consideration is recited to have been paid, it may be shown that it was not; that if it be recited to be one sum, it may be shown to be a different sum; and that if it is recited as being money, it may be shown to be some article of property; but that 'whenever the consideration goes beyond mere recital and becomes contractual, thereby creating and attesting the right, it cannot be varied.' "

"*Humble Oil & Refining Co.* v. *Strauss* (1922) (Tex. Civ. App.), 243 S. W. 528. The court says, further, that where the recital of the consideration is something more than a mere receipt or recital, embodies the terms of the contract, it is subject to the general rule excluding parol evidence of additional terms, in spite of the fact that they may constitute part of the consideration; and that if the purported testimony tends to change the writing as an obligation, it should be rejected."

In our opinion the judgment of the trial court is right and, accordingly, we affirm it.

*Affirmed.*