This case presents questions whether a transfer of land between family members operated as a contract or a gift, whether evidence of oral terms of that transfer was admissible, and whether a valid forfeiture of the transferee's rights occurred under Iowa Code chapter 656 (2007). Because we agree in part and disagree in part with the district court's legal analysis, we reverse and remand for further proceedings.
I. Background Facts and Proceedings
In 2002, Betty and Richard Fritz acquired an eighty-acre tract of farmland known as Roseland. Roseland had been owned previously by Richard's parents. Upon obtaining title to the property, Betty and Richard were required to pay $16,000 to other heirs. They did so by taking out a note and mortgage on the property. Shortly thereafter, they discussed conveying Roseland to John Fritz, one of their five children.
On December 10, 2002, Betty and Richard contacted an attorney, who subsequently prepared a set of documents consisting of a real estate contract, a consent to forfeiture of real estate contract, a warranty deed, four promissory notes, and a letter.[1] These documents, which were signed by the parties on or about February 7, 2003, provided for the transfer of Roseland from Betty and Richard to John within five years subject to certain conditions.
The real estate contract was a modified version of an Iowa State Bar Association form. It described Betty and Richard as the "Sellers" and John as the "Buyer" and authorized the sellers to forfeit the buyer's rights if the buyer failed to timely perform the contract. The contract also recited the following "consideration" for the transfer of Roseland to John: (1) John was to assume and pay off the balance of the $16,000 note and mortgage; (2) John was to pay all real estate taxes on the property commencing with the September 2003 installment and maintain insurance on the property; (3) John was to maintain the property in good repair; and (4) John was required to "comply with [the] oral understanding between Sellers [Betty and Richard] and Buyer [John] not set out herein." The contract also contained the following provisions:
 The agreed fair market value of the land described in Exhibit "A" is $70,000.00. The difference between what Buyer is required to pay ($16,000 loan at Farmers Savings Bank, Wever, Iowa) and the fair market value ($70,000.00), said difference being $54,000.00, will be gifted by Seller to Buyer over the five year term of this contract. The annual gifting shall be not less than $10,800.00 annually commencing with the first gift on January 2, 2003.
 If the Buyer has complied with the terms of this contract, the warranty deed and abstract of title shall be delivered to Buyer on or before January 2, 2008. Sellers are executing a warranty deed contemporaneously with the execution of this contract and such deed shall be placed in Seller's safe deposit box and said deed shall be delivered to Buyer on January 2, 2008 provided Buyer has satisfied the terms of this contract or at such other time as Seller may direct.
 . . . .
 Because of the nature of the gift being made by Sellers to the son, the Buyer, Buyer shall not be allowed to assign this contract or to sell, convey, gift or otherwise dispose of all or any part of said property without the express written consent of Sellers.
The real estate contract was executed by Betty, Richard, and John and was recorded on February 13, 2003, with the county recorder.
The consent to forfeiture of real estate contract was signed on or about February 7, 2003, by John and his wife, Gena. It provided that if, in the opinion of Betty and Richard, John violated any term, condition, or provision of the real estate contract, then Betty and Richard could record the consent as evidence of John's default, and the real estate contract would be deemed completely terminated and of no force and effect. In that case, any amounts previously paid as consideration for the property would be deemed "rent." In the consent, John and Gena also purported to waive any required notice of default or any defense they might have.[2]
The warranty deed and the four promissory notes were unsigned. The warranty deed provided for a conveyance of Roseland from Betty and Richard to John, and the four promissory notes obligated John to pay $10,000 to each of his siblings. Betty and Richard retained the unsigned warranty deed and promissory notes.
Finally, the letter, signed by Betty, Richard, John, and Gena on or about February 7, 2003, and prepared by the same attorney, expanded upon the terms of the transaction to some extent. It stated that if John complied with the terms of the real estate contract and "this letter," then Roseland would be conveyed to him on or about January 2, 2008. The letter also stated that "[t]here may also be other verbal terms which the three of you have discussed and agreed upon."
Betty testified that the "oral understanding" mentioned in the real estate contract and the "verbal terms" referenced in the attorney letter were essentially as follows: John had to refrain from drinking and from driving illegally; he had to help Richard with Richard's farming activities, especially taking care of cattle and fences; and he had to sign the four $10,000 notes for the siblings at the end of the five years. If John performed these oral conditions, in addition to the written terms expressly set forth in the documents, he would receive full title to Roseland at the beginning of 2008.
Betty testified that John had a history of OWI (operating while intoxicated) convictions and his parents were very concerned further alcohol abuse could land him in prison. Also, Richard's physical condition was somewhat frail. He needed John's assistance in farming.
After signing the documents, John helped Richard with his farm, paid the property taxes from March 2003 to March 2005, and made at least one payment on the $16,000 note. Additionally, John made improvements to Roseland. Betty and Richard also made a payment on the note.
On May 2, 2005, Richard died and Betty became the sole legal owner of Roseland. In June 2005, Betty (not John) paid off the balance of the $16,000 note on the property early.
On August 29, 2005, John and Gena separated, and on September 9, 2005, Gena filed a petition for dissolution of marriage. Shortly thereafter, on September 20, 2005, Betty arranged for the recording of the consent to forfeiture of real estate. The following day, she claims to have delivered a letter to John that stated, "I have filed the Consent to Forfeiture of a Real Estate Contract at Lee County Recorder." Betty did not notify Gena of the claimed forfeiture, but during the ongoing divorce proceeding John informed Gena the property had been forfeited. Throughout that proceeding, neither party claimed any interest in Roseland, but Gena did request half of the money they had invested in Roseland.
On March 28, 2006, John executed a will leaving all of his property to his two daughters. On June 30, 2006, John unexpectedly died. John and Gena's dissolution of marriage had proceeded to trial, but had not been finalized.
On July 29, 2006, Betty sold Roseland to her son, Mark Fritz, and his wife, Patty Fritz, for $60,000.
On June 4, 2007, Gena, individually and as the representative for the Estate of John Fritz, filed a petition seeking a declaratory judgment that she and/or the estate were the equitable owners of Roseland. Her petition named Betty, Mark, and Patty as defendants.
Gena alleged that Betty and Richard had entered into a binding contract to sell Roseland to John, and the attempted forfeiture of the contract was invalid for failure to comply with Iowa Code chapter 656. Betty, Mark, and Patty answered, denying Gena's allegations.
On April 10, 2008, Gena's claim was tried to the district court. On May 23, 2008, the court found the transfer of Roseland to John was a conditional gift rather than a contract and chapter 656 therefore did not apply. The court also found John had a history of alcohol abuse and that Betty and Richard had set up a conditional gift as an incentive for John to change his lifestyle. However, after Richard's death, the court found that Betty became more and more disgruntled with John's continued use and abuse of alcohol and his inability to care for the cattle and the fences. The district court implicitly rejected Gena's theory that John's failings were simply a pretext to get the property away from John so Gena could not assert a claim to it in the dissolution proceedings.
Finally, the district court concluded that even if chapter 656 did apply, its requirements were fulfilled. In the court's view, John and Gena had waived any right to notice under chapter 656 by signing the consent. In any event, John had actual notice of the forfeiture no later than November 2005. Accordingly, the court dismissed Gena's petition for declaratory relief.
Gena appeals.
II. Standard of Review.
This case was tried at law; thus, our review is for correction of errors at law. Iowa R. App. P. 6.4; See Harrington v.Univ. of N. Iowa, 726 N.W.2d 363, 365 (Iowa 2007) ("We review declaratory judgment actions according to the manner [in which] the case was tried in the district court.");Teamsters Local Union No. 421 v. City of Dubuque,706 N.W.2d 709, 712 (Iowa 2005) ("A declaratory judgment action tried at law limits our review to correction of errors at law."). We are bound by the trial court's findings of fact if they are supported by substantial evidence. Iowa R. App. P. 6.14(6)(a); Harrington, 726 N.W.2d at 365.
III. Analysis.
A. Contract or Gift?
This first question presented is whether the parties entered into a contract in February 2003 or whether Betty and Richard simply made a conditional gift — a "gift with the burthens." See Thomas v. Thomas, (1842) 2 Q.B. 851, 859-60, 114 Eng. Rep. 330, 333-34 (Patteson, J.).[3] No one disputes that there was a bargained-for exchange in this case. The real estate contract recites various forms of "consideration" that John was to provide: assumption and payment of the note; payment of real estate taxes; maintenance of the property; and an additional "oral understanding" that the district court found included a promise to refrain from abusing alcohol. See Hamer v. Sidway, 27 N.E. 256, 257 (N.Y. 1891) (holding that a promise to refrain from drinking could constitute legal consideration for a contract). Although the contract indicated $54,000 of the $70,000 value of Roseland would be "gifted" to John over the five-year term of the contract, that was not really correct, because John had obligations to help out on his parents' farm and, according to Betty, a further obligation to pay $10,000 to each of his four siblings once he received title to Roseland.[4]
The district court used the term "contractual contingent gift" to characterize the transaction. We agree this transaction was in some ways a hybrid of contract and gift. We also do not dispute the district court's finding that donative intent originally motivated this transaction. However, regardless of donative intent, where a transaction involves a bargained-for exchange, as it did here, a contract follows. As stated in Restatement (Second) of Contracts section 81, at 206 (1981): "The fact that what is bargained for does not itself induce the making of a promise does not prevent it from being the consideration for the promise." See also Restatement (Second) of Contracts § 71 cmt. c, at 174 (1981) ("Even where both parties know that a transaction is in part a bargain and in part a gift, the element of bargain may nevertheless furnish consideration for the entire transaction."). Betty's testimony makes clear that the various covenants were obtained from John in return for transferring property to him. This is really an easier case than Thomas v. Thomas, where the Queen's Bench held that the transfer of a dwelling house to a relative in return for her paying one Pound Sterling per year toward the ground rent and keeping it in "good and tenantable repair" was a binding contract supported by consideration.Thomas, 2 Q.B. at 859-60, 114 Eng. Rep. at 333-34.
As our supreme court has said, "`Motive' and `consideration' are not identical." Clayman v. Bibler, 210 Iowa 497,500, 231 N.W. 334, 336 (1930). An altruistic motive may coexist with a valid legal contract, supported by consideration. Seealso Burmeister v. Hamann, 208 Iowa 412, 414-16,226 N.W. 10, 11-12 (1929) (holding that a promise by the decedent to convey his property to his housekeeper was enforceable as part of a binding contract, despite the heirs' claim that it was a mere gratuity or gift).
The difference between a conditional gift and a contract has been famously explained by Samuel Williston as follows:
 If a benevolent man says to a tramp, "If you go around the corner to the clothing shop there, you may purchase an overcoat on my credit," no reasonable person would understand that the short walk was requested as the consideration for the promise; rather, the understanding would be that in the event of the tramp going to the shop the promisor would make him a gift. Yet the walk to the shop is in its nature capable of being consideration. It is a legal detriment to the tramp to take the walk, and the only reason why the walk is not consideration is because on a reasonable interpretation, it must be held that the walk was not requested as the price of the promise, but was merely a condition of a gratuitous promise.
 It is often a difficult question to decide whether words of condition in a promise indicate a request for consideration or state a mere condition in a gratuitous promise.
 Although no conclusive test exists for making the determination, an aid in determining which interpretation of the promise is more reasonable is an inquiry into whether the happening of the condition will benefit the promisor. If so, it is a fair inference that the happening was requested as a consideration. On the other hand, if, as in the case of the tramp stated above, the happening of the condition will not benefit the promisor but is obviously for the purpose of enabling the promisee to receive a benefit (a gift), the happening of the event on which the promise is conditional, though brought about by the promisee in reliance on the promise, will not be interpreted as consideration.
3 Samuel Williston Richard A. Lord, A Treatise on theLaw of Contracts § 7:18, at 412-18 (4th ed. 2008). This is not a case like Williston's tramp.
Although we do not dispute the district court's factual findings, we believe it applied the incorrect legal framework. For example, Fierro v. Hoel, 465 N.W.2d 669, 671
(Iowa Ct.App. 1990), cited by the district court, does not involve the distinction between a contract and a gift. Based on the evidence presented at trial, the only reasonable conclusion that could be drawn was that the parties entered into a contract in February 2003.
B. Statute of Frauds or Parol Evidence?
Gena also objects to the district court's receipt of evidence concerning the "oral understanding" among Betty, Richard, and John, asserting the statute of frauds bars the receipt of such evidence. Here we part company with Gena and instead agree with the district court.
Iowa's statute of frauds provides:
 Except when otherwise specifically provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by the party's authorized agent:
 . . . .
 (4) Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year.
Iowa Code § 622.32. But the contract here was in writing. The issue is not whether there was a contract, but whether proof could be offered of additional oral terms. This does not implicate the statute of frauds, but the parol evidence rule.
The parol evidence rule bars the receipt of extrinsic evidence to contradict (or even supplement) the terms of a fully integrated written agreement. Garland v. Branstad,648 N.W.2d 65, 69 (Iowa 2002); Whalen v. Connelly,545 N.W.2d 284, 290-91 (Iowa 1996). "An agreement is fully integrated when the parties involved adopt a writing or writings as the final and complete expression of the agreement."Whalen, 545 N.W.2d at 290-91; see Restatement (Second) of Contracts § 210, at 116 (1981) ("A completely integrated agreement is an integrated agreement adopted by the parties as a compete and exclusive statement of the terms of the agreement."). Here, however, the agreement was not fully or even partially integrated. To the contrary, it expressly referred to an "oral understanding" and "verbal terms." See 32A C.J.S. Evidence § 1591, at 681 (2008) ("A writing that does not appear or purport to include all the terms of the agreement between the parties, or which shows incompleteness on mere inspection of its face, may be enlarged by parol or extrinsic evidence to show the entire agreement."). Accordingly, the district court did not err in admitting evidence of additional oral covenants.
C. Forfeiture under Chapter 656.
Since the transaction was a contract rather than a gift, it fell under chapter 656. Any contract that provides for the sale of real estate, and for the forfeiture of the buyer's rights if the buyer fails to comply with the contract, shall only be forfeited as provided in Iowa Code chapter 656. Iowa Code § 656.1. Indeed, the attorney for Betty and Richard implicitly acknowledged this point by having John and Gena sign an advance "consent to forfeiture" in February 2003.
According to chapter 656, in order for a seller to forfeit a buyer's interest, the seller must serve written notice on the buyer thirty days prior to forfeiture. Id. § 656.2;see also Goodale v. Bray, 546 N.W.2d 212, 214 (Iowa 1996). The notice must: (1) identify the contract and accurately describe the real estate; (2) specify the terms of the contract that are not being complied with by the buyer; (3) state that unless the buyer performs the terms in default within thirty days and pays the reasonable cost of serving the notice, the contract will be forfeited; and (4) specify the amount of attorney fees claimed by the seller and state that attorney fees are not required to comply with the notice and prevent forfeiture. Iowa Code § 656.2. Further, Iowa Code section 656.6 specifically states that the chapter is applicable to "all cases where the intention of the parties, as gathered from the contract and surrounding circumstances, is to sell or agree to sell an interest in real estate, any contract or agreement of the parties to the contrary notwithstanding."
Thus, parties cannot "pre-waive" the requirements of chapter 656. Any such waivers are against public policy. See
Restatement (Third) of Property (Mortgages) § 3.1(b), at 98 (1997) (stating that any agreement impairing a mortgagor's right of redemption is ineffective); id. § 3.4, cmt. g, at 164-65 (1997) (applying the same principle to contracts for deed); Winklemen v. Sides, 88 P.2d 147, 156
(Cal.Ct.App. 1939) ("California law prohibits the mortgagor and mortgagee from entering into certain contracts attempting in advance to waive the statutory provisions incident to formal foreclosure proceedings. Such contracts are void as violating public policy."); cf. Moad v. Neill, 451 N.W.2d 4, 7
(Iowa Ct.App. 1989) (indicating that a mortgagor may contract away his/her rights to possession and rents or profits following foreclosure, but not suggesting that a mortgagor may contract out of the statutory procedures set forth in Iowa law). Having chosen to structure their transaction as a real estate contract subject to forfeiture, the parties were bound by the forfeiture provisions of chapter 656.
Next, we must determine whether Betty complied with chapter 656. There is no substantial evidence that she did. At most, Betty may have delivered a one-sentence letter to John in September 2005 stating that she had filed the "consent to forfeiture" with the county recorder, although the district court did not make such a finding. Regardless, this letter was not a valid notice under chapter 656, which includes specifying the terms of the contract that were not being complied with and stating that the buyer has thirty days to comply or the property will be forfeited. Iowa Code § 656.2.[5]
The district court's finding that John had actual notice of a forfeiture no later than November 2005 also does not obviate the need for compliance with chapter 656. "`[F]orfeiture statutes are to be construed strictly against a forfeiture, with the burden to show full and strict compliance with the statutory procedures upon the party seeking forfeiture.'" Fairfax v.Oaks Dvl. Co., 713 N.W.2d 704, 708 (Iowa 2006) (quotingJamison v. Knosby, 423 N.W.2d 2, 5 (Iowa 1988)). For example, in Fairfax, the Supreme Court invalidated a forfeiture under chapter 656 involving married vendees where the vendor had arranged for personal service of only one copy of the forfeiture notice on the wife at their residence, instead of two copies. Id. The court acknowledged the "probability" that the husband would have received actual notice, but nonetheless struck down the forfeiture. Id. We conclude that chapter 656 applies to this transaction and the notice requirement was not complied with. Thus, we reverse.
IV. Conclusion.
For the reasons set forth herein, we hold that John Fritz had an interest in a real estate contract, that parol evidence was admissible to determine the "oral understanding" portion of that contract, and that the contract was not validly forfeited under Iowa Code chapter 656. We reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
[1] The attorney testified that Betty had approached several other attorneys who did not want to get involved.
[2] The attorney who prepared the documents testified that he told Betty this waiver was "out of the ordinary; that ordinarily you would consider using a 30-day notice." However, he felt it was acceptable under the law because of the situation.
[3] We would say "burdens" rather than "burthens" today.
[4] The attorney who designed and documented the transaction agreed that Betty did not have "unfettered discretion" to declare a forfeiture. There would have to be a "breach by John" of the terms of the written contract or the oral understanding.
[5] We agree with the district court that Gena was not entitled to notice. Goodale, 546 N.W.2d at 214 (stating that status as the vendee's wife does not entitle one to notice under Iowa Code chapter 656); Hansen v. Chapin,232 N.W.2d 506, 510 (Iowa 1975) ("[O]rdinarily a wife of a purchaser who is not a party to the contract for purchase of real estate is not entitled to notice of forfeiture on any theory that her dower interest would not be cut off unless she was served.").