Elizabeth Furleigh, appellant, v. C. C. Dawson, individually and as administrator of estate of Alice Gentry, et al., appellees.

No. 48415.

(Reported in 62 N.W.2d 174)

January 12, 1954.

George S. Marty and Breese & Cornwell, all of Mason City, for appellant.

Senneff & Bliss and Mason & Stone, all of Mason City, for appellees.

Wennerstrum, J.—The plaintiff sought to establish a trust in certain real and personal property which was the distributive share of Fred Gentry, now deceased, and which he received as the husband of Alice Gentry from her estate. He conveyed his interest in this property in the manner hereinafter disclosed. The trial court held certain evidence offered by the plaintiff was not admissible and there was insufficient other evidence to substantiate her claim. It dismissed her petition and action. She has appealed.

John and Elizabeth Dawson were the parents of Elizabeth Furleigh, the plaintiff, and of the defendants, C. C. Dawson, George Dawson, J. H. Dawson and John Dawson. Alice Gentry and Fred Dawson were also children. However, both of them died subsequent to the death of their parents and before the commencement of this litigation. The defendants Everett Dawson, Marie Poindexter and Lula Brinker are the children of Fred Dawson.

After the death of both the father and the mother Alice Gentry purchased the interest of all the other heirs in the home farm of 150 acres. A portion of this farm was still owned by Alice Gentry at the time of her death, which occurred on December 26, 1950. The manner of and circumstances pertaining to the disposition of the interest of Fred Gentry in the property of Alice Gentry is involved in this litigation.

At the time Alice Gentry purchased the home farm she obtained a loan from the Modern Brotherhood of America in the amount of $12,000 and gave a first mortgage on the farm as security. By virtue of the obtaining of this loan a cash settlement was made with some of the brothers and sisters. However, a second mortgage was given to the plaintiff for her share which was in the amount of $7000. This indebtedness was represented by three notes, one for $2000 and two notes for $2500 each. She also gave a third mortgage to her brothers J. H. Dawson and Fred Dawson, same being security for a payment of $5400. This agreement among the heirs was consummated in 1923 following the death of Elizabeth Dawson, the mother. The notes to Elizabeth Furleigh became due in 1927, 1928 and 1929. The record also discloses Alice Gentry borrowed $1200 from I. H. Furleigh, husband of Elizabeth Furleigh, the plaintiff herein, and gave him a note for this amount. This note was given to the plaintiff by her husband and the plaintiff asks recovery for the amount of this last note and the notes previously mentioned.

Alice Gentry found it impossible to make the necessary payments due upon the first mortgage obtained from the Modern Brotherhood of America during the years 1934 and 1935. Thereafter she obtained an $8000 loan from the Federal Land Bank

and made a settlement with the Modern Brotherhood of America. It accepted the amount received from the Federal Land Bank and released its mortgage. In connection with this refinancing Elizabeth Furleigh and Fred and J. H. Dawson released the mortgages which had heretofore been given them. There is no showing the notes were ever turned over to Alice Gentry. In connection with the obtaining of the Federal Land Bank loan, Elizabeth Furleigh, J. H. and Fred Dawson signed affidavits stating there was no unpaid indebtedness due them.

Alice Gentry died intestate and without issue leaving surviving her, Fred Gentry, her husband, and her sister, the plaintiff herein, and also her brothers C. C. Dawson, John Dawson, George Dawson, J. H. Dawson, a nephew, Everett Dawson, and Marie Poindexter and Lula Brinker, nieces. Following the death of Alice Gentry in California her husband brought her body to Clear Lake, Iowa, for burial. Thereafter on the petition of Fred Gentry, C. C. Dawson was appointed administrator of the Alice Gentry estate. In connection with the appointment of the administrator there were two conferences in the office of E. B. Stillman, an attorney in Clear Lake, Iowa. The first conference was held Saturday evening, December 30, 1950. There were present at the time, according to the testimony of Mr. Stillman, other than himself, C. C. Dawson, Milton Dawson, a son of C. C. Dawson, Jim (J. H.) Dawson and Fred Gentry. Milton Dawson in his testimony stated he was not present at the Saturday conference. J. H. Dawson gave no testimony relative to the Saturday conference and apparently was not present. At this first meeting Stillman informed Mr. Gentry he was entitled to the first $15,000 of the estate and one half of the remainder. Mr. Stillman further testified Fred Gentry then stated: "* * * I didn't know that. But that makes no difference." Mr. Stillman's testimony then continued as follows: "He says, 'Alice and I have talked this matter over and we had agreed that I would not have any interest in the Cerro Gordo County property and that that would be divided equally among Alice's heirs.' 'Well,' I said, 'if you are going to do that you have got to sign a waiver.' And he says, 'Well,' he says, 'why couldn't I make a deed?' I says, 'That is a good idea; you could make a deed.'

And then I said to him, 'Now this cannot be done tonight you understand. My secretary is not here and we have got to wait to have it done.' 'Well,' he says, 'I didn't intend to do it tonight, but I wanted to come up and tell you what I desire to be done and see what your idea is.' And at that time I made an appointment for the following Monday morning for him to come up and they did come up."

By virtue of this first conference and a later one held on January 2, 1951, an agreement was signed by Fred Gentry and C. C. Dawson wherein in consideration of the setting off to him of all the property of Alice Gentry in California, the payment of $1000 to him from his wife's estate and expenses of $160.04 which he had incurred in bringing his wife's body back to Iowa and his own expenses making the round trip, as well as the transfer to him of an automobile which had been the property of Alice Gentry during her lifetime and the delivery to him of any bonds which were in his name and which might be in the safe-deposit box of Alice Gentry in a Clear Lake bank, Fred Gentry waived "* * * any and all rights, all interest and any title which he might have in and to the estate of Alice Gentry other than that which is to be conveyed to Fred Gentry under the terms of this Agreement and more especially the estate of Alice Gentry which is in the State of Iowa, and the waiving of any interest in and to the said estate shall include all personal property and real estate which the said Alice Gentry owned in her lifetime except those items which are to be conveyed to the said Fred Gentry under the terms of this Agreement."

At the time of this second conference Fred Gentry executed a quitclaim deed to C. C. Dawson. This deed was made pursuant to the agreement previously referred to and which was entered into contemporaneously with the making of the waiver of interest agreement. It was further provided in the agreement entered into that C. C. Dawson as an individual for himself would carry out for the benefit of the other heirs in the estate of Alice Gentry the terms of the agreement.

It should be further noted the quitclaim deed named C. C. Dawson as grantee but there is no conflict in the evidence that he held it merely in trust for the other heirs. The individuals

who were present at the two conferences testified substantially to the same facts as related by Mr. Stillman. Each of them testified there was no statement made by Fred Gentry to the effect any claimed indebtedness of Alice Gentry to Elizabeth Furleigh was to be paid first out of the proceeds from the sale of Fred Gentry's interest.

Fred Gentry left Clear Lake on January 2, 1951, to return to his home in California. On January 5, 1951, he wrote a letter to the plaintiff in which he stated in part:

"I have settled with the Estate there and hope it meets with your approval. I appointed Chet [C. C. Dawson] as administrator for two reasons. First he is familiar with the affairs and is there where he can look after it better. Then I felt he was the one Alice would have wanted. Also he was familiar with the moral obligations owing you, Jim and Everett (as Fred's heirs). These are not legal and an outsider might not have allowed them ahead of the others. Chet agreed with me in the presence of Mr. Stillman that these should be paid first. * * *."

In a letter written January 5, 1951, by Fred Gentry and mailed to Alice E. Furleigh, daughter of Elizabeth Furleigh, he set forth about the same statements he incorporated in the letter written to her mother. It was therein stated: "* * * I told Chet in the presence of Mr. Stillman I thought the moneys owing to your mother, Jim and Everett (as Fred's heirs) should be paid tho they were not legal but I considered them a moral debt. * * *."

It is upon the basis of these letters and other facts hereinafter enumerated that the plaintiff claims there is a trust relationship on the part of C. C. Dawson by which she is entitled to payment of the indebtedness of Alice Gentry to her. Plaintiff testified to intermittent payments made to her since 1923 or 1924 by Alice Gentry and she introduced in evidence, over objections, a memorandum of these payments. There was also introduced in evidence an undelivered deed which was found among the effects of Alice Gentry which deed was dated January 6, 1939 and which conveyed to F. H. Dawson a two-elevenths

interest, to J. H. Dawson a two-elevenths interest and to Elizabeth A. Furleigh a seven-elevenths interest in the real estate then owned by Alice Gentry. We shall not further lengthen this opinion by relating the circumstances pertaining to the preparation and execution of this deed.

It is shown by the evidence that on or about May 5, 1951, C. C. Dawson and his wife, Elizabeth Furleigh and her daughter Alice, Jim (J. H.) Dawson and his daughter, and George Dawson, along with some of the other children of those previously mentioned were present at a meeting held at the old Gentry farm home. At this meeting distribution of the contents of the home was made. Mr. Stillman testified in part concerning this meeting:

"I said, 'Now, I understand that there is some contention here as to whether or not some of these heirs—some of you heirs have a right to come in for some debts that Alice owed you way back a long time ago.' I don't believe I referred directly to the occasion, but I said, 'I want you to understand this, that I do know that at the time that those indebtednesses were released that Alice signed an agreement that that was all she owed and that it was my opinion that they gave up all of their right to that debt and it was the same as a cancellation of the debt at the time that those mortgages were released.' * * * Q. And was there any claim made that anybody had a preference over the other mortgages to any extent? A. No. Q. Did Mrs. Furleigh assert that or anyone for her? A. No. * * * A. Chet said this: He says, 'We are all getting older and I think it would be a good thing if we can make a distribution here within a six months period so that we can all get something out of this estate while we will enjoy it.' Q. And was there any objection made by Mrs. Furleigh or Alice Furleigh in her behalf in reference to this distribution? A. No."

The statements of Mr. Stillman were substantiated by the testimony of some of the persons who were present at the meeting of May 5, 1951. However, Alice Furleigh, daughter of Elizabeth Furleigh, testified at that time she made the statement, "* * * I said, 'I think that her obligations should be met before there

is any division of the property' and to that there was no answer by anyone. None of those there said anything. Nothing else was said during that time about paying the obligations."

This is denied by Mr. Stillman, C. C. Dawson, J. H. Dawson, Mrs. Harold Kaster and Milton Dawson. It is of significance Elizabeth Furleigh gave no testimony similar to that of her daughter although she was present at the meeting.

The trial court in its conclusions of law found, in part, that there were no allegations in plaintiff's petition alleging fraud or mistake and no reformation of the agreement heretofore mentioned was asked by plaintiff; that the trust agreement of January 2, 1951, by clear, explicit and unambiguous language creates an express trust in writing stating who is the trustee, the property included in the trust, the beneficiaries of it and the portion thereof each was to receive, the same being the portion they would receive as heirs-at-law of Alice Gentry; and that there is no basis for the introduction of oral evidence, over timely and proper objections as was made in this case.

I. Declarations and admissions of a grantor after the execution and delivery of a conveyance cannot be received in evidence to render it ineffectual. Mathers v. Sewell, 193 Iowa 35, 38, 186 N.W. 636; Blain v. Blain, 215 Iowa 69, 81, 244 N.W. 827; Huxley v. Liess, 226 Iowa 819, 824, 285 N.W. 216. Plaintiff seeks to substantiate her contentions by evidence of statements and writings made after the execution of the instruments herein involved. The trial court properly refused to consider the evidence pertaining to the letters written by Fred Gentry after his return to California, as well as the oral statements he is claimed to have made to individuals in California subsequent to his return.

II. There was proffered testimony of a statement made by Fred Gentry to a W. R. Pietzke after his return to California from the funeral. The testimony of Mr. Pietzke does not particularly support plaintiff's claim. However, the testimony regarding these statements was timely objected to as seeking to vary the terms of a written instrument and also because they sought to establish the terms and character of an express trust by parol testimony. He testified in part: "* * * and Chet [C.

C. Dawson] was to pay Mrs. Furleigh and Fred Dawson's children before the estate was settled." There is nothing in the quoted statement that indicated the named individuals were to be first paid from Alice Gentry's estate in Iowa. Although we have not set out the pleadings it should be stated there was no allegation in them relative to fraud or mutual mistake.

Parol evidence is not admissible to vary, alter or contradict the terms of a written agreement or instrument in the absence of allegations in the pleadings of fraud, accident or mistake. Banwart v. Shullenburg, 190 Iowa 418, 421, 180 N.W. 190; City of Des Moines v. City of West Des Moines, 244 Iowa 310, 315, 56 N.W.2d 904, 906, and authorities cited.

III. It is definitely shown by substantial evidence that C. C. Dawson received title to the real estate involved and the interest in the estate of Alice Gentry as trustee for all her heirs. This is substantiated by the testimony of F. P. Walker, a businessman in Clear Lake. He had a conversation with Fred Gentry when he was in Clear Lake and concerning it testified in part:

"A. Well, he said he wanted a thousand dollars cash; said he had no money and he would like to have a thousand dollars to go home on and he said that he had no part in the making of this estate and that he felt that if the heirs would agree to that, that they should have the balance, and it should be divided among them and I know he made the remark to me at that time that C. C. Dawson—he called him Chet * * *—had probably done more for Mrs. Gentry than anyone else, but he felt after thinking it over that it should be divided equally among the heirs."

That the interest waived by Fred Gentry and the conveyance of the real estate was for the benefit of all the heirs in equal part is disclosed by the waiver itself wherein it is stated Fred Gentry "* * * does hereby assign and set over *unto the other heirs* in the estate of Alice Gentry all of his rights and interest and titles which he might have in and to all property in the Alice Gentry estate * * *." (Italics supplied.)

This conclusion is supported by the statement in 54 Am. Jur., Trusts, section 103, page 94: "Where it is declared that

the trust property is held for the joint benefit of named beneficiaries, they hold as cotenants * * *."

To the same effect is the statement in 65 C. J., Trusts, section 285, page 538: "The general presumption where there are several beneficiaries is, in the absence of a showing of a contrary intent of the grantor, that they shall share equally."

In Lowell v. Lowell, 185 Iowa 508, 511, 170 N.W. 811, 812, we said: "Where a conveyance to purchasers of a tenancy in common is silent, they are presumed to take equal shares [citing cases]."

See also Williams v. Monzingo, 235 Iowa 434, 439, 440, 16 N.W.2d 619, 156 A. L. R. 508, and annotations at page 515; In re Estate of Anders, 238 Iowa 344, 346, 26 N.W.2d 67.

And consequently it is our holding that in the instant case where there is a waiver in favor of all the heirs the beneficiaries of the trust property hold title in equal shares.

IV. It is one of the contentions of the plaintiff that the waiver on the part of Fred Gentry and the quitclaim deed to C. C. Dawson constituted a gift and consequently parol evidence is admissible for the purpose of determining the conditions of the gift. The case of In re Estate of Conner, 240 Iowa 479, 487, 36 N.W.2d 833, and Needles v. Shenandoah Nat. Bk., 202 Iowa 927, 211 N.W. 392, are cited in support of this contention.

We cannot construe the instruments executed by Fred Gentry as evidence of a gift. It must be kept in mind that as a part of the agreement Gentry was to receive real property in California, a certain amount of cash, the family automobile and also the bonds. We hold the authorities cited by the plaintiff are not controlling.

V. We have not discussed all of the grounds upon which the plaintiff seeks reversal. Likewise we have not discussed all the brief points upon which the defendants justify an affirmance. However, we believe the conclusions we have heretofore reached are determinative of the case and the properly admitted evidence fully supports the trial court's decision.—Affirmed.

All JUSTICES concur except BLISS, C. J., who takes no part.