J. Paul YODER and Lowell Yoder, Appellants,

v.

NUTRENA MILLS, INC., Appellee.

No. 16645.

United States Court of Appeals
Eighth Circuit.

Sept. 20, 1961.

——◆——

A. C. Cahill, Iowa City, Iowa, for appellant. Messer & Cahill, Iowa City, Iowa, on the brief.

Charles A. Hastings, Cedar Rapids, Iowa, and Wayne C. Collins and Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, on the brief, for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

BECK, District Judge.

This appeal, in a diversity suit with all jurisdictional requirements met, is from two judgments[1] granted on a motion for a summary judgment in an action by the appellee, hereinafter referred to as Nutrena, based on written contracts and promissory notes executed and delivered pursuant thereto, covering the appellants' 1957 turkey raising operation, which within the credit limitations specified in the written contracts was to be financed by Nutrena.

[1]. The judgment under the motion granted by the trial court on the third count, as well as the counterclaim, is not before us on this appeal in view of the notice which is as follows, with the name of the attorney for the appellant and address omitted:

"Notice of Appeal.

"Notice is hereby given that J. Paul Yoder and Lowell Yoder, defendants above named, by and through their attorneys, Messrs. Hamilton & Cahill, hereby appeal to the United States Court of Appeals for the Eighth Circuit from the Order sustaining the motion for summary judgment and the Judgment entered thereon, by the United States District Court for the Northern District of Iowa, Cedar Rapids Division, for the plaintiff Nutrena Mills, Inc., in the amount of Sixteen Thousand Seven Hundred Sixty and 74/100 Dollars ($16,760.74) plus interest on one count and Nineteen Hundred Sixty Four and 53/100 Dollars ($1,964.53) plus interest on a second count entered in this action on September 30, 1960." See Railway Express Agency, Inc., v. Epperson, 8 Cir., 1957, 240 F.2d 189, Donovan v. Esso Shipping Co., 3 Cir., 1958, 259 F.2d 65, rehearing denied

The trial court's decision under the motion that the record presented "no genuine issue as to any material fact", is founded on a three-count complaint, the answer thereto and counterclaim, the reply and depositions taken by both sides which are referred to in the trial court's opinion as extensive.

That record, within the restrictions against short circuiting trials on material issues of fact referred to in Ford v. Luria Steel & Trading Corp., 8 Cir., 1951, 192 F.2d 880, Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 1951, 189 F.2d 213 and United States v. Farmers Mut. Ins. Ass'n of Kiron, Iowa, 8 Cir., 1961, 288 F.2d 560, appears to us to have settled and established all questions of fact, to the point of leaving "no genuine issue as to any material fact". [192 F. 2d 882.]

On that point leaving generalities out and specifics in, we note: (1) the appellants' admission that the written contracts referred to in the two counts before us on this appeal are true and correct written contract commitments made by the appellants as they signed the one, November 8, 1956[2], and the other on De-

September 17, 1958, Carter v. Powell, 5 Cir., 1939, 104 F.2d 428, certiorari denied 1939, 308 U.S. 611, 60 S.Ct. 173, 84 L.Ed. 511, Gannon v. American Airlines, Inc., 10 Cir., 1957, 251 F.2d 476.

[2]. "Form N–210 Rev. 11–55       No. 4985

"Nutrena Turkey Finance Agreement

"This Agreement, made and entered into this 8 day of Nov. 1956, by and between NUTRENA MILLS, INC., a Kansas corporation, hereinafter referred to as "Nutrena", and J. Paul Yoder of (town) Parnell (county) Iowa (state) Iowa hereinafter referred to as "Grower".

"Witnesseth:

"In consideration of the mutual and several promises herein contained, it is hereby agreed by and between the parties hereto as follows:

"1. Nutrena will extend financing assistance to Grower, as hereinafter provided, in an amount which will not exceed, in total $42750.00 to assist Grower in raising 15,000 turkeys during the 1957 turkey season.

cember 13, the only difference between "A" copied in the margin and "B", aside

from the dates of the contracts and the respective acceptance dates, being the

"2. Grower may use the financing assistance made available hereunder by Nutrena to purchase, in the manner hereinafter set forth, the following items in amounts which will not exceed a per bird allowance of:

"Feed 30 lbs.; Grain .... lbs., Insurance 10¢; Supplies 10¢; Poults 85¢.

"Nutrena reserves the right to reduce proportionally the total amount of financing assistance available to Grower, should the size of Grower's turkey program be reduced, either by Grower voluntarily or by factors beyond Grower's control.

"3. Grower will provide all equipment, labor and other materials and supplies needed to complete his turkey program during the season covered by this agreement.

"4. Grower will purchase feed from ................, a Nutrena dealer at ................, State Iowa,. Within the limits specified in Sections 1 and 2 above Grower may purchase poults, grain and supplies from persons selected by Grower. Nutrena, however, will have the right to refuse to pay for items which it considers below standard quality.

"5. Upon receipt of each lot of the items listed in Section 2 above, Grower will execute and deliver to the seller a Delivery-Receipt and Invoice and a Promissory Note (using for this purpose Nutrena form N–16 payable to Nutrena in an amount which shall be the purchase price of the items received. In the case of poults, Grower agrees that Nutrena may add to the purchase price a service charge of ....¢ per poult. In such purchases Grower will not exceed the maximum limits established in Sections 1 and 2 above.

"6. To secure payment of Grower's obligations to Nutrena hereunder, Grower will, when requested by Nutrena, execute and deliver to Nutrena a first chattel mortgage or chattel mortgages on all turkeys, turkey poults, feed and supplies owned by Grower at any time prior to payment in full of all sums due Nutrena hereunder and on all grains purchased with funds made available hereunder.

"7. All sums owned by Grower to Nutrena, whether evidenced by promissory notes held by Nutrena or otherwise, will be paid, together with interest at the rate of 6 per cent per annum, without demand, on or before Jan. 15, 1958. In the event of a sale of any turkeys raised hereunder Grower will demand and receive from purchaser a check payable to Nutrena and Grower jointly and will endorse these checks and forward them to Nutrena immediately upon receipt thereof. The entire proceeds from such sales will be retained by Nutrena until all sums owed Nutrena by Grower hereunder or otherwise are paid, at which time Nutrena will return to Grower all promissory notes executed by Grower hereunder and held by Nutrena and will satisfy mortgages executed by Grower to Nutrena. In the event that any of the said turkeys are removed from Grower's premises for any purpose other than an immediate sale, an amount equal to the fair market value of such turkeys shall become due and owing Nutrena immediately and shall be paid promptly by Grower.

"8. Nutrena may, at its election, secure, for the account of Grower, insurance on turkeys and turkey poults raised by Grower during the period covered by this agreement. Nutrena may determine the extent to which this insurance will cover risks incidental to raising turkeys. The proceeds from such insurance will be made payable to Nutrena and Grower as their respective interests may appear.

"9. Grower will give Nutrena immediate written notice of any loss of or damage to the said turkeys or turkey poults from any cause whatsoever and will preserve the carcass of any dead turkey or turkey poult until the same has been examined by Nutrena or a representative of the insurance company insuring the said turkeys or turkey poults.

"10. Grower will furnish Nutrena periodic reports, as requested by Nutrena, upon forms furnished by Nutrena.

"11. Grower will permit representative of Nutrena to enter upon the premises upon which the said turkeys and turkey poults are being raised, at reasonable times, to inspect the same.

"12. Grower will employ recognized practices of turkey husbandry and will comply with reasonable requests by Nutrena for changes in Grower's brooder and shelter equipment and regarding the feeding, care and shelter of said turkeys and turkey poults.

"13. Grower agrees to purchase and use only Nutrena feeds during the season covered by this agreement.

"14. Nutrena will not be liable to Grower on any claim whatsoever arising out of the condition, quality or non-delivery of any item purchased by Grower for use in his turkey program during the season covered by this agreement, whether such item is purchased with funds made available by Nutrena hereunder or

credit limitations fixed at $7,125, number of turkeys 2,500, and J. Paul Yoder sign- ing the partnership name of J. Paul Yoder and Son by J. Paul Yoder; (2)

otherwise, except to the extent that Nutrena, as a manufacturer, is liable to an ultimate consumer of its products. Grower will give Nutrena prompt written notice of any claim against Nutrena arising out of his contract and of any claim against the dealer referred to above arising out of the quality or condition of Nutrena feeds purchased by Grower during the season covered by this agreement. Failure to give Nutrena written notice within fifteen (15) days after discovery of the circumstances giving rise to such claim shall constitute a waiver of such claim whether it be against Nutrena or the dealer.

"15. Each of the parties to this contract designated as Grower does hereby authorize each of the other parties hereby so designated to execute promissory notes for merchandise as provided in section 2 above delivered hereunder, and agrees that he shall be liable to Nutrena for the full amount thereof jointly and severally with all other persons so designated, as fully as if he had executed it himself.

"16. The provisions contained upon the reverse side are hereby incorporated in and made a part of this agreement as fully as if they appeared on the face hereof.

"This agreement shall become effective only upon acceptance by Nutrena at its office at ................. This contract contains all of the agreements between the parties hereto in connection with this transaction and cannot be varied orally. The Grower hereby affirms that before signing he has read this agreement, including the provisions on the reverse side, and understands all of the conditions contained herein without reservations.

"Witnesses:

.................... Grower  <u>X  J.</u>
               <u>Paul Yoder</u>

"Francis Kalkbrenner ...............
               <u>Nutrena   Mills,</u>
               <u>Inc.</u>
.................... By <u>G. E. Turner</u>
               Dated <u>1-23-57</u>

"Exhibit 'A'

"Division Office Copy

"17. If the Grower defaults in the payment of any indebtedness to Nutrena when due, or if the Grower fails to keep and perform any of the covenants contained herein or contained in notes or mortgages executed in connection herewith, or if the Grower becomes insolvent, or if a petition in bankruptcy is filed by or against the Grower, or if a receiver for the Grower is appointed, or if the said turkeys or turkey poults be levied upon, attached, or in any way subjected to the payment of indebtedness of Grower to a person or persons other than Nutrena, or if for any reason, Nutrena may reasonably deem itself or the debt insecure, then Nutrena shall have the option to terminate this agreement immediately and upon such termination all obligations of Nutrena hereunder shall cease and terminate immediately and all indebtedness of the Grower to Nutrena shall become due and payable immediately, without demand or notice.

"18. In the event this agreement is terminated by Nutrena under the provisions contained in Section 17 above, Nutrena is hereby authorized by the Grower to take immediate possession of any or all of the property, including turkeys and turkey poults, subject to a mortgage or mortgages executed by the Grower to Nutrena wherever the said property may be found without notice or demand and with or without legal process and shall have the right to enter upon the premises where the property is located for the purpose of taking possession of the said property or for the purpose of exercising any other right granted herein and shall not be liable for damages for trespass when entering for such purposes.

"19. Nutrena is hereby authorized to maintain possession of such property upon the premises where the said property is located, to feed the said turkeys and turkey poults at Grower's expense until the same are ready for market or until Nutrena shall determine to sell the same, to use such pasture and rough land for forage as shall be necessary to properly keep and care for the said turkeys and turkey poults, and to use all turkey houses, shelter and other equipment owned or leased by the Grower and all grain and turkey feed owned by the Grower and located upon the Grower's premises to feed and care for the said turkeys and turkey poults during the said period.

"20. Nutrena is hereby authorized to sell such property (1) either at public or private sale, (2) in such county and at such place as Nutrena may elect, (3) with or without having the property at the place of sale, (4) without notice to Grower and Nutrena shall have the right to purchase the said property at such sale in the same manner and to the same effect as any person not interested therein.

"21. Out of the proceeds of the sale of such property, Nutrena shall retain such amount as shall pay all indebtedness of

their further uncontroverted admission that Exhibits "B" [3] and "D" [4] show how the contemplated transactions were performed, the number of notes, the amount

Grower to Nutrena, including interest owing Nutrena at the time of sale, all expenses, costs and charges incurred in connection with the pursuing, taking, removing, feeding, keeping, handling, advertising and selling of the said property and any and all liens that may be thereon having priority over Nutrena's mortgage. The remainder, if any, shall be paid to Grower. Grower and Nutrena are not engaged in a joint enterprise. If the proceeds from the sale of the mortgaged property are insufficient to pay the Grower's indebtedness to Nutrena, the Grower shall remain liable to Nutrena for the unpaid balance of such indebtedness.

"22. The rights granted Nutrena herein may be exercised cumulatively or individually without prejudice to any rights which Nutrena may have at law.

"23. The Grower hereby waives any and all exemptions provided by Law and any claim for damages against Nutrena on account of the taking and repossessing of the said property, whether taken forcibly, peaceably or by replevin, or by other legal action."

On the back of this instrument is a stamp reciting that it was received by Nutrena Mills, Inc., Cedar Rapids, on November 12, 1956.

This whole contract, except the portions which are underscored, is a printed form.

3.                                "Exhibit 'B'.

Nutrena Mills, Inc., v. J. Paul Yoder

Schedule of Notes and Payments

| Supplier | Date of Note | Advance on Note | Total Advanced |
|---|---|---|---|
| Nutrena Mills, Inc. | 11–8–56 | $ 1.00 | $ 1.07 |
| Farmers Savings Bank | 2–21–57 | 9,423.25 | 9,832.11 |
| Farmers Savings Bank | 3–15–57 | 5,695.00 | 5,979.75 |
| Maas Grain | 3–16–57 | 2,475.00 | 2,598.34 |
| Maas Grain | 3–27–57 | 1,160.00 | 1,215.68 |
| Skola Ins. | 4–15–57 | 157.95 | 165.06 |
| Maas Grain | 4–23–57 | 3,872.96 | 4,042.08 |
| Maas Enterprise | 5–7–57 | 3,416.00 | 3,557.19 |
| Duane L. Yoder | 5–20–57 | 80.00 | 83.13 |
| Maas Grain | 5–22–57 | 2,710.74 | 2,816.01 |
| Gerald Breneman | 5–27–57 | 49.20 | 51.07 |
| Maas Grain | 6–11–57 | 2,496.86 | 2,587.99 |
| Skola Ins. | 6–3–57 | 223.30 | 231.56 |
| Farmers Savings Bank | 6–6–57 | 2,125.00 | 2,202.56 |
| Maas Grain | 6–18–57 | 1,996.51 | 2,065.39 |
| Sidney Coon | 6–24–57 | 112.50 | 116.27 |
| Duane Yoder | 7–1–57 | 177.00 | 182.72 |
| Maas Grain | 7–9–57 | 3,127.00 | 3,223.94 |
| Maas Grain | 7–20–57 | 1,843.00 | 1,896.75 |
| Maas Grain | 8–1–57 | 3,391.73 | 3,484.44 |
| Ted Russell | 8–7–57 | 135.00 | 138.56 |
| Maas Grain | 8–12–57 | 4,644.48 | 4,762.91 |
| Maas Grain | 8–13–57 | 802.04 | 822.36 |
| Maas Grain | 9–3–57 | 4,314.65 | 4,409.57 |
| | | $54,432.17 | $56,566.51 |

| Customer | Date of Payment | Payment on Note | Total Payment |
|---|---|---|---|
| St. Paul Ins. Co. | 7–16–57 | $ 112.52 | $ 115.88 |
| Rock Island Produce | 7–29–57 | 8,265.40 | 8,494.08 |
| Rock Island Produce | 8–27–57 | 10,744.41 | 10,991.53 |
| Rock Island Produce | 10–28–57 | 8,380.05 | 8,487.59 |
| Rock Island Produce | 11–19–57 | 3,422.77 | 3,454.72 |
| Rock Island Produce | 12–3–57 | 4,000.00 | 4,028.00 |
| Rock Island Produce | 12–19–57 | 4,215.70 | 4,233.97 |
| | | $39,140.85 | $39,805.77 |

of each and dates, total interest accrued, total credits and final due date balance of $16,760.74 on the one and $1,964.56 on the other; and (3) uncontroverted and compelling evidence that there is no factual basis for the appellants' denial that it did not have "any information or knowledge as to the truth of the allegations contained in Par. 1" of the appellants' complaint:

"That plaintiff is a corporation organized and existing under the laws of the State of Kansas and is a citizen of the State of Kansas and is authorized to do business in the State of Iowa and maintains an office for that purpose in Cedar Rapids, Iowa."

Moreover, there is an implied admission by the appellants that there is no "genuine issue as to any material fact" as they predicate their only defense to each of the balances alleged to be due under the two contracts, under the averments in their answer:

"Defendants admit the allegations contained in Par. 4 [5] of Plaintiff's

Recapitulation

| | |
|---|---|
| Total Amount Advanced on Notes | $56,568.51 |
| Total Amount Received on Notes | 39,805.77 |

| | |
|---|---|
| Balance Due Nutrena Mills, Inc. | $16,760.74" |

Note numbers appearing in the Exhibit in the record opposite to each "supplier" and interest accruals from one advancement to another, because of space limitations, are omitted from this Exhibit, neither one serving any particular material purpose.

4.                                        "Exhibit 'D'.
Nutrena Mills, Inc., v. J. Paul Yoder and Lowell Yoder,
Partners, doing business as J. Paul Yoder and Son

| Supplier | Date of Note | Advance on Note | Total Advanced |
|---|---|---|---|
| Nutrena Mills, Inc. | 12–13–56 | $ 1.00 | $ 1.07 |
| Farmers Savings Bank | 2–8–57 | 2,125.00 | 2,244.35 |
| Skola Ins. | 2–16–57 | 146.25 | 154.27 |
| Maas Grain | 4–23–57 | 436.50 | 457.65 |
| Maas Grain | 5–22–57 | 601.97 | 625.35 |
| Maas Grain | 6–17–57 | 1,612.55 | 1,868.45 |
| Maas Grain | 7–9–57 | 4,834.00 | 4,963.85 |
| | | $ 9,759.27 | $10,134.99 |

| Customer | Date of Payment | Payment on Note | Total Payment |
|---|---|---|---|
| Rock Island Produce | 9–5–57 | $ 3,128.00 | $ 3,195.77 |
| Rock Island Produce | 10–28–57 | 4,911.63 | 4,974.66 |
| | | $ 8,039.63 | $ 8,170.43 |

Recapitulation

| | |
|---|---|
| Total Amount Advanced on Notes | $10,134.99 |
| Total Amount Received on Notes | 8,170.43 |

| | |
|---|---|
| Balance Due Nutrena Mills, Inc. | $ 1,964.56 |

The note numbers and the accrued interest columns shown on this Exhibit in the record are also excluded for the same reasons.

———◆———

5. That paragraph in the complaint is as follows:
"That on or about November 11, 1956, an agreement between plaintiff and defendant was made wherein plaintiff agreed to finance defendant in growing turkeys during the 1957 turkey season (1937 obviously an error). The details

petition but alleges that said agreement referred to as Exhibit 'A' was delivered by the defendants to the Plaintiff, Nutrena Mills, Inc., upon stated and specific conditions, to-wit: That the Plaintiff, Nutrena Mills, Inc., would furnish sufficient feed to feed out all the turkeys purchased by the defendants or raised by them without regard to the maximum amount set forth in said Exhibit 'A' and would provide the necessary financing to pay off the balance remaining due on the turkey operation from the preceding year which conditions were orally expressed and were understood between defendants and the agents and representative of the plaintiff and were relied upon by these defendants.

"Defendants admit that Plaintiff advanced certain sums of money in pursuance to the agreement, Exhibit 'A', and defendants admit that they executed several promissory notes all as alleged by plaintiff, but defendants allege that each and all of said promissory notes were executed and delivered upon the same and identical conditions and in pursuance of said agreement and were each and all a part and parcel of the entire transaction all as is set forth in the preceding paragraph. Defendants admit that a portion of said notes and interest have not been paid but deny that they are indebted to the plaintiff for the reason that the plaintiff violated the terms of the agreement and condition upon which said agreement and notes were delivered in that plaintiff refused to carry out the terms thereof by refusing to deliver any additional feed to the defendants, or furnish additional financing, well knowing that such refusal would cause serious and irreparable damage to these defendants. That the damage caused to the defendants exceeds any amount claimed to be due or owing to the plaintiff as elsewhere herein set out and defendants deny that Exhibit 'B' attached to Plaintiff's complaint shows the amount now due and owing, and defendants deny that they are indebted to the plaintiff in any amount as alleged by plaintiff."

To that array of reasons, which "in" part, no doubt, prompted the trial court's action on the motion, we add all of Yoder's testimony as it is reproduced in appellants' brief since it is the only specific oral proof submitted on the pleaded "conditional delivery":

"A. And so Kalkbrenner brought his contract around and started filling it out, and he put the pressure on me. In other words, he was determined that I go ahead, and I said, 'You know how I feel, I would like to have a chance for at least several weeks to do some shopping around.' I had already, and he said, 'You know we have always taken care of you in the past, and we never had any troubles,' and he said, 'I know that you didn't come out very well here, but that——' Well, we had a— just a good old conversation, and he had his contract filled out and he shoved it out to me to sign it, and Lockwood had—I had told you previously Lockwood and I had talked before Kalkbrenner brought his contract.

"Q. That was early in October?
A. No, it was the same date.

"Q. Oh, it was the same date.
A. It was the same date, but when Lockwood got through he approached me and took me over to another table. That is where we talked in the office, and so I—I took the contract and I hesitated. I read it and I signed it, and I picked it up, and I told Kalkbrenner, I said, 'I will give you this contract under one con-

of which are more fully set out in said agreement, a copy of which is attached hereto as Exhibit 'A', and by this ref-

erence made a part hereof as if fully set out herein."

dition, that you will take care of me the way you did in the past, and that we will—and you will take us—your company will take me through this turkey year, stand back of me and furnish me the feed to go through, just as Lockwood and I had talked, and if you will, I will let you have this contract,' and he said, 'We have in the past, and we are going to do it in the future. We will do it next year.' So I gave it to him."

■ Subsection (c) of Rule 56, F.R. C.P., 28 U.S.C.A., that: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *", within the restrictions to which we have referred, vests power in the trial court, as such a motion is invoked, to summarily decide whether or not the requirements of that subsection have been met, its actions, in such cases, necessarily being co-extensive, with the powers it is called on to exercise, when it rules on admissibility of evidence in the course of regular trials. Judge Sanborn's comment in the Ford v. Luria Steel & Trading Corp. case, points in that direction:

"The controlling question in this case is whether evidence to establish the defendants' alleged oral profit-sharing agreement would be admissible upon a trial. Nothing is more futile than calling a jury to determine a fact the existence of which is not susceptible of proof." [192 F.2d 882.]

■ Here, as in that case and in view of the limited scope [6] given by the appellants to this appeal, we are principally concerned with the application of one of the exceptions to the Iowa parol evidence rule referred to In re Simplot's Estate

(Rooney v. Lenehan), 1933, 215 Iowa 578, 246 N.W. 396, 398:

"Parol evidence is admissible to prove that the delivery of a contract in a given case was conditional only and that compliance with the condition failed. Such parol evidence must be directed solely to the fact of *delivery* and to the conditions thereof. Such parol evidence does not operate to alter in any way the *terms* of the contract. If conditional delivery be proved, and that compliance with the condition failed, then the *entire contract* fails regardless of its terms. The entire contract is deemed not to have become effective."

More precise application of that exception can be had, however, as we view it in the light of the Iowa court's construction of that state's parol evidence rule and in the light of definitions by other authority. This phase of the case is summarized by the trial court in its opinion, Nutrena Mills, Inc. v. Yoder, D.C.N.D.Iowa 1960, 187 F.Supp. 415, 419:

"The instant case is principally concerned with an application of the Iowa parol evidence rule. This rule, rather than being a rule of evidence, is a rule of substantive law. Fidelity Savings Bank v. Wormhoudt Lumber Co., Iowa 1960, [251 Iowa 1121], 104 N.W.2d 462, 465; Williams v. Williams, Iowa 1959 [251 Iowa 260], 100 N.W.2d 185, 188; Martin v. Stewart Motor Sales, 1955, 247 Iowa 204, 73 N.W.2d 1, 4. See Loth and Jennings, The Parol Evidence Rule in Iowa, 20 Iowa L.Rev. 713, 717 (1935). Since jurisdiction in this case is based upon diversity of citizenship, the doctrine of Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is applicable. Under the doctrine of that case the Iowa parol evidence rule governs. The Court of Appeals

6. Appellants' brief, page 2:
"The sole question involved herein is the right of the defendants-appellants to show the conditional delivery of the con-

tracts in suit and the breach of such condition as against the claim that such evidence is inadmissible as being in violation of the parol evidence rule."

for this circuit has held that when the only evidence relied upon to create a factual dispute in opposition to a motion for summary judgment is an oral agreement which is inoperative because of the parol evidence rule, no genuine factual dispute may be said to exist and summary judgment should be granted. Booth v. Barber Transportation Co., 8 Cir., 1958, 256 F.2d 927, 929. See also Ford v. Luria Steel & Trading Corp. 8 Cir., 1951, 192 F.2d 880, 882. In the instant case the terms of the written contracts are clear and unambiguous. There is no dispute as to the amounts advanced under the contracts. Thus, there would be no genuine factual dispute if the condition upon which the defendants allege the contracts were delivered may not be established by parol evidence. This is true both in regard to plaintiff's claims and defendants' counterclaim.

"As defined in the Restatement of Contracts, Sec. 237 (1932), the parol evidence rule 'makes inoperative to add to or vary * * * [an integrated written] agreement all contemporaneous oral agreements relating to the same subject matter; and also, unless the integration is void, or voidable and avoided, all prior oral or written agreements relating thereto.' The Restatement's definition has been approved by the Iowa Court in Weik v. Ace Rents, Inc., 1958, 249 Iowa 510, 87 N.W.2d 314, 318, and City of Des Moines v. City of West Des Moines, 1953, 244 Iowa 310, 56 N.W.2d 904, 906. The Iowa Supreme Court has consistently maintained that the general rule is that in the absence of fraud, accident, or mistake, parol evidence is not admissible to vary, add to, or contradict the express terms of a written contract. Williams v. Williams, Iowa 1959 [251 Iowa 260], 100 N.W.2d 185; Stebens v. Wilkinson, 1957, 249 Iowa 365, 87 N.W.2d 16, 71 A.L.R.2d 277; Furleigh v. Dawson, 1954, 245 Iowa 359, 62 N.W.2d 174; Northern Trust Co. v. Anderson, 1935, 222 Iowa 590, 262 N.W. 529, 271 N.W. 192. So, too, where the law makes an implication in the absence of an express provision, such implication becomes a part of the contract and parol evidence is not admissible to vary it. Thus, a blank indorsement to a negotiable instrument results in certain obligations which cannot be avoided by alleging a contemporaneous oral contract which would vary those obligations. Versteeg v. Hoeven, 1931, 214 Iowa 92, 239 N.W. 709, 714; First Nat. Bank of Hawkeye v. Raatz, 1929, 208 Iowa 1189, 225 N.W. 856, 857; Moore v. Altmyer, 1925, 199 Iowa 368, 202 N.W. 214, 215. Similarly, the legal effect of a written lease which does not place upon a landlord the duty to repair is to relieve him of such duty and a contemporaneous or prior parol contract may not be introduced to vary such legal effect. Jones v. Sargent, 1922, 193 Iowa 1256, 188 N.W. 818, 819; Banwart v. Shullenburg, 1920, 190 Iowa 418, 180 N.W. 190, 192. The reason for the rule has been said to be that because the parties have made the writing the memorial of their understanding, it constitutes the contract as a matter of law and nothing may be added to it or substituted in its stead. Martin v. Stewart Motor Sales, 1955, 247 Iowa 204, 73 N.W.2d 1, 4; City of Des Moines v. City of West Des Moines, 1953, 244 Iowa 310, 56 N.W. 2d 904, 906. But, as the Iowa Court has said In re Simplot's Estate, 1933, 215 Iowa 578, 246 N.W. 396, at pages 397–398:

"The parties agreed in the broad statement of the rule which forbids the acceptance of parol evidence to contradict or vary the terms of a written contract. Their disagreement arises over the application of the rule and over the so-called 'exceptions' to the rule * * *."

514

Again, as to the exception itself, we note Farmers' Savings Bank of Slater v. Weeks, 1929, 209 Iowa 26, 227 N.W. 508, 509 (defended on the ground that the mortgage was delivered on condition that it was not to be enforced against personal property):

"Nor can the contention be sustained as supporting the plea of *conditional* delivery. Concededly the mortgage was then and there delivered to the payees, and was intended to go into effect so far as the real estate was concerned. The condition contended for was not to be precedent to delivery, but had relation to the enforcement of the instrument after delivery. A condition to delivery suspends for the time being the contract as a whole. It can have no effect to qualify or modify the terms of the contract as written. The performance of the condition must be precedent to the delivery. The case presented by the defendants is not one of conditional delivery at all. The gist of their contention is that the provisions of the mortgage were to be waived and qualified after delivery. \* \* \* The district court properly rejected the evidence, so far as it sought to qualify the terms of the mortgage.",

in Klemm v. Weil, 1922, 194 Iowa 1073, 190 N.W. 388, 390:

"The line of demarcation between the rule which forbids the admission of contemporaneous parol evidence to vary a writing and the rule of the statute which permits parol evidence to show the conditions upon which or the purpose for which an instrument was delivered is a very fine one, and in order to be guarded at all must be guarded diligently.",

in Hills Savings Bank v. Hirt, 1927, 204 Iowa 940, 216 N.W. 281, 283:

"There is a vast distinction between conditional delivery and an agreement that there should be liability only in a certain event. 'Parol evidence is admissible to show conditions relating to the delivery or taking effect of the instrument, as that it shall only become effective upon certain conditions or contingencies, for this is not an oral contradiction or variation of the written instrument but goes to the very existence of the contract, and tends to show that no valid and effective contract ever existed; but evidence is not admissible which, conceding the existence and delivery of the contract or obligation, and that it was at one time effective, seeks to nullify, modify, or change the character of the obligation itself by showing that it is to cease to be effective, or is to have an effect different from that stated therein, upon certain conditions or contingencies, for this does vary or contradict the terms of the writing.",

and finally in Travers-Newton Chautauqua System v. Naab, 1923, 196 Iowa 1313, 196 N.W. 36, 37, 32 A.L.R. 780, where a written contract providing for purchase by the defendant of a number of season tickets to the entertainments produced by the plaintiff with the further provision that it was not to become valid until signed by at least nine other purchasers, was later defended on the ground that a contemporaneous oral agreement provided that the written one was not to become binding unless signed by ten or more persons who were financially responsible, including three designated persons. The Supreme Court rejected that defense as it said:

"We have repeatedly held that parol evidence to establish a condition precedent to the delivery of a written contract does not violate the rule by seeking to change, vary, or alter the terms of an existing contract. The terms of the contract itself remained unchanged. It is necessary, in order to establish the validity of any contract, to prove two things: One is its due execution, and the other is is full legal delivery. Mere manual delivery or the change of custody of a written instrument is

not necessarily sufficient to constitute in all cases a legal delivery of the instrument. The manual possession or custody may be given to one for some special purpose, without there being such legal delivery of the instrument as to give it validity. Delivery is largely a matter of intention. Where there is a condition precedent to the full legal delivery of a written instrument, the writing does not become effective until such condition has been complied with, and it may generally be proven by parol evidence that there was. such a condition precedent to the full legal delivery of the instrument and to its becoming effective. This rule is of necessity applied in cases where the written instrument itself is silent on the subject-matter of the condition precedent, which it is sought to establish by parol. But, where the written instrument speaks on the very subject-matter of the condition precedent which it is sought to establish by parol, then a different rule must obtain. In such an instance, the writing itself is sought to be obviated or modified by proof of a contemporaneous parol agreement, and this cannot be done. \* \* \* "

"Were the contract entirely silent on this subject-matter, it might well be said that a condition precedent of this character might be established, without doing violence to the parol evidence rule. In the instant case, however, the parties have bound themselves by providing in the contract in regard to the very subject-matter of a condition precedent to its validity. Let it be remembered at this point that there is no claim of any fraud or misrepresentation whatsoever. The parties were all capable of making a contract. They bound · themselves by apt terms, as they had a right to do. This action is not in equity to reform the instrument, but the appellant seek by parol to modify and change the provisions thereof, so

that, instead of reading 'not valid until signed by 10 or more persons,' it should read 'not valid until signed by 10 or more *financially responsible persons, including A. F. Miller, E. A. Landis, and Dr. C. W. Tyler.'* "

The case at bar varies from Naab, only in the respect as pointed out in an observation by the trial court with which we agree:

" \* \* \* that the written contract in the Naab case dealt specifically with the subject matter of the alleged condition as a condition precedent, while the written contract in the instant case deals with the subject matter of the alleged condition in terms of it being part of the consideration given by one of the parties thereto. It is the view of the Court that the principles are the same and when the subject matter of an alleged condition precedent is dealt with in the written instrument, in any form, the condition may not be shown by parol evidence to be different from the manner in which it is expressed in the writing. [Farmers' Savings Bank of Slater v. Weeks and Versteeg v. Hoeven, supra.]" [187 F.Supp. 425.]

In Clayman v. Bibler, 1930, 210 Iowa 497, 231 N.W. 334, 336, referred to and relied on by the trial court, it is said:

"The rule that where the consideration expressed in the contract is in itself a promise, and therefore contractual, it cannot generally be varied by parol, is of practical universal application. Gelpcke Winslow & Co. v. Blake, 19 Iowa 263; Rynear v. Neilin, 3 G.Greene 310; Lewis v. Day, 53 Iowa 575, 5 N.W. 753; McGee v. Allison, 94 Iowa 527, 63 N.W. 322; McEnery v. McEnery, 110 Iowa [718], 719, 80 N.W. 1071; Schrimper v. Railway Co., 115 Iowa 35, 82 N.W. 916, 87 N.W. 731; Lane v. Richards, 119 Iowa 24, 91 N.W. 786; Slump v. Blain, 177 Iowa 239, 158 N.W. 491; Banwart v. Shullenburg, 190 Iowa 418, 180 N.W. 190; Chantland v. Sherman, 148 Iowa

516

352, 125 N.W. 871; Kay v. Spencer, 29 Wyo. 382, 213 P. 571, 27 A.L.R. 1122; McCourt v. Peppard, 126 Wis. 326, 105 N.W. 809; Blough v. Parry, 144 Ind. 463, 40 N.E. 70, 43 N.E. 560."

The broad aspects of the transaction covered by the two written contracts, call for financing by Nutrena within a specified monetary and time limit period of the appellants' 1957 turkey raising and selling operation, in consideration, on their part, to purchase all of the needed feed from Nutrena. Those contracts are in evidence and are as they appear in the marginal parts of the opinion. None of their terms are in dispute. An important one, in view of the appellants' defense is the provision found in the two that they *"contain all of the agreements between the parties hereto"* and that neither can be *"varied orally"* (emphasis supplied). Here, we note, too, the admission in the answer that the contracts were signed and accepted as alleged in the complaint and in the uncontroverted proof that the appellants signed, executed and delivered and to the extent of $39,-140.85, paid the twenty-four notes *pursuant to the one contract* and $8,039.63 on the seven notes executed and delivered under the other.

*Even more compelling against the defense of conditional delivery, is the counterclaim, grounded in part on the written contracts which under the theory of that defense could not have had valid legal existence.*

From Yoder's testimony, which on the motion we accept as true and to which we apply a construction most favorable to the appellants, we find: (1) that the discussion referred to in the testimony was had before the November contract was signed; (2) that the condition mentioned is the basis for the alleged defense of conditional delivery and (3) that full financing for the contemplated turkey operation was the consideration for the written contracts.

But even with such extensiveness given to that testimony and its import under the motion, we find it in conflict with the Iowa parol evidence rule and the exception the appellants have invoked and therefore not competent, under the authorities to which we have referred. The contracting parties made their writings the "memorials" of their understanding. Those are their contracts *"as a matter of law and nothing may be added to them or substituted in their stead"*. (Emphasis supplied.) See Martin v. Stewart Motor Sales, City of Des Moines v. City of West Des Moines, and In re Simplot's Estate, supra.

Not by-passed, is the appellants' integrated contention, that the respective promissory notes are within the conditional delivery exception to the Iowa parol evidence rule, and that as to them Yoder's oral testimony can not be excluded. Suffice it to answer that those notes were but incidents to the transaction as a whole, a part of the financing performance contemplated and therefore subject to the written terms of the contract. *Moreover, this action is on the written contracts and not on the notes.* See State Bank v. Central Flour & Feed Company, 1939, 227 Iowa 596, 266 N.W. 614.

Numerous cases and authorities, not referred to in this opinion, are cited by the appellants. We find them either not consistent with the views here expressed, not in point under the facts or the law, misleading to a point because of statement of general rules without accompanying qualifications, and in at least one instance, a use of an out of a context statement which is inconsistent with and does not reflect the reasons prompting the trial court's ruling on the motion.

Affirmed.